**In re Robert T. HOLMES and Julie A. Holmes, Debtors.**

**Robert T. Holmes and Julie A. Holmes, Plaintiffs,**

**v.**

**Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc., Defendant.**

**Bankruptcy No. 06–50236.
Adversary No. 06–5035.**

United States Bankruptcy Court,
D. Minnesota.

May 14, 2008.

Peter Greenlee, Greenlee Law Office, Twig, MN, for Plaintiffs.

Bryan C. Keane, Monica L. Clark, Dorsey & Whitney LLP, Minneapolis, MN, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR LEAVE TO FILE A THIRD–PARTY COMPLAINT, AND DETERMINING JURISDICTION OVER PLAINTIFFS' COMPLAINT

GREGORY F. KISHEL, Bankruptcy Judge.

This adversary proceeding came on before the Court for hearing on the motion of the Defendant ("Deutsche Bank") for leave to file and serve a third-party complaint. Deutsche Bank appeared by its attorney, Bryan C. Keane. The Plaintiffs ("the Debtors") appeared by their attorney, Peter C. Greenlee. Acting *sua sponte,* the Court raised the issue of whether the bankruptcy jurisdiction of the federal courts would extend to Deutsche Bank's claims under the proposed third-party complaint, and whether the Debtors' claims that were already in suit are within the bankruptcy jurisdiction. Counsel completed post-hearing briefing as directed.[1] This order memorializes the analysis of the jurisdictional issues, and the resultant disposition of the Defendant's motion.

### PARTIES, CURRENT AND WOULD–BE

1. The Debtors are residents of Duluth, Minnesota. They filed a voluntary petition under Chapter 7 on June 20, 2006. Their case is still pending in this Court.

2. Deutsche Bank holds the status of trustee under a securitization of mortgage-secured debt that includes all rights related to a mortgage against the Debtors' homestead. The associated individual mortgage instrument is of record in the

---

1. Monica L. Clark, Esq. submitted the brief for Deutsche Bank.

office of the St. Louis County, Minnesota Registrar of Titles. The mortgagee under the instrument was identified as Ameriquest Mortgage Company.

3. The proposed third-party defendant, Great Minds, Inc., d/b/a Signature Closing Service ("Signature"), administered the closing of the loan that is identified to the mortgage described above. Deutsche Bank alleges that Signature acted improperly in connection with the documenting of the mortgage.

## CIRCUMSTANCES BEARING ON JURISDICTION

The events, acts, and circumstances that are relevant to the jurisdictional issues are all memorialized in the Court's records, for this adversary proceeding and for the underlying bankruptcy case.[2]

**Relevant Circumstances: BKY 06–50236**

1. In the Schedule A that they filed with their bankruptcy petition, for "real property," the Debtors noted an interest in real estate located at 164 West Ideal Street, Duluth, Minnesota 55811. They assigned a current value of $145,000.00 to it. They noted the associated "Amount of Secured Claim" as "0.00." Their entry included the following recitation:

> *AMERIQUEST CLAIMS A MORT-GAGE INTEREST OF APPROXI-MATELY $134,000; DISPUTED BY DEBTORS AS INVALID UNDER MINN STAT.507.04 SUBD. 6.

2. In their Schedule B, the Debtors included an entry for an asset described as:

> CLASS ACTION MEMBERSHIP–STATES V AMERIQUEST MORT-GAGE CO, TOWN & COUNTRY CREDIT CORP./ AMC MORTGAGE

SERVICES INC.-DEBTORS ARE EL-IGIBLE FOR MEMBERSHIP IN RESTITUTION PAYMENT OF AN UNKNOWN VALUE.

They assigned a value of "$1.00" to this asset.

3. In their Schedule C, the Debtors claimed an exemption for the full identified value of their interest in the real estate noted in paragraph 1, i.e., $145,000.00. They elected the homestead exemption provisions of Minn.Stat. §§ 510.01–.02. No creditor or party in interest timely objected to this claim of exemption.

4. In their Schedule F, for "Creditors Holding Unsecured Nonpriority Claims," the Debtors noted a claim in favor of "Ameriquest Mortgage Co.," in the amount of $135,000.00.

5. On July 10, 2006, Deutsche Bank filed a motion for relief from stay, seeking leave to foreclose the mortgage that is at issue in this adversary proceeding. On August 3, 2006, after the Debtors commenced this adversary proceeding, Deutsche Bank withdrew that motion.

6. No creditor or party in interest objected to the Debtors' claim of exemption in the real estate, timely or otherwise.

7. On September 18, 2006, the Trustee of the Debtors' bankruptcy estate filed a notice that payment of a dividend to creditors appeared possible. This notice, which contained a deadline for the timely filing of claims, was sent to all creditors. The deadline has now passed, though it still is open to creditors to amend their claims.

8. As of the date of this order, the Trustee has not completed her administration of the bankruptcy estate. On May 7, 2008, the Court granted her motion to

---

**2.** Technically, these are all findings of fact. However, their content is not derived from evidence, as such; they only recite sequences of events in the Debtors' bankruptcy case, and the facial content of documents filed there and in this adversary proceeding.

compel the Debtors to turn over to her a check recently received by them, apparently in settlement of the mortgage-related litigation noted in Finding 2. The court file does not reflect whether the Trustee is still pursuing the recovery of other assets, or whether she has collected any other monies yet.

9. On September 26, 2006, the Debtors were granted a discharge under Chapter 7.

### Pleadings and Procedural Posture: ADV 06–5035.

10. On July 19, 2006, the Debtors filed the complaint that commenced this adversary proceeding.

11. In paragraph 1 of the complaint, the Debtors state:

This is an action by debtors and plaintiffs Robert T and Julie A Holmes to determine the validity and extent of a mortgage interest in property by the defendant Deutsche Bank National Trust Company.

In paragraph 2, they identify the basis of the Court's jurisdiction as "28 U.S.C. Sec. 157(b)(2)(K) and 1334." They also state: "This is a core proceeding."

12. Via paragraphs 6 through 8 of the complaint, the Debtors allege that the instrument that granted the mortgage "appears to be executed by both Robert and Julie Holmes"; that it "was in fact not reviewed, signed or executed by" Robert Holmes; and that "the signature 'Robert Holmes' contained in said mortgage was signed by person(s) unknown to" the Debtors. They allege that on the date recited in the acknowledgment on the mortgage instrument, Robert Holmes was incarcerated in the Minnesota state prison at Rush City.

13. In paragraph 9 of the complaint, the Debtors state that the notary public who gave the "signature witness statements" for the acknowledgment "did not

witness the signature of … Robert T. Holmes."

14. The Debtors recite that the mortgage instrument "is invalid pursuant to Minnesota Statutes Sec. 507.04, subdivision 6." They pray for a declaratory judgment to that effect as their relief.

15. Deutsche Bank interposed its answer through a Minneapolis law firm.

16. Deutsche Bank pleads that it "is unable to admit or deny the allegations of" the paragraphs of the complaint that are material to the Debtors' theory of statutory invalidity. It raises the affirmative defenses of ratification and equitable subrogation. It prays for dismissal with prejudice of the Debtors' action.

17. At an initial scheduling conference held on December 5, 2006, the attorney who then represented Deutsche Bank requested the setting of a discovery period somewhat longer than typical. She stated that this would permit her client's further investigation into the actions of the business entities and persons that had been involved in the closing for the mortgage. That request was granted. A scheduling order fixing deadlines for the completion of discovery and the filing of dispositive motions was entered on December 6, 2006.

18. When neither party filed a dispositive motion, the Court issued an order on July 23, 2007, setting this matter for trial.

19. Shortly thereafter, new counsel for Deutsche Bank substituted in. In very short order, the parties stipulated to a general extension of all deadlines for trial preparation and a continuance *sine die* of the trial. The Court granted that relief, on the understanding that a scheduling conference would be reconvened to address the status of this matter.

20. A week after a date was set for the scheduling conference, counsel for

Deutsche Bank filed the motion at bar. Deutsche Bank seeks leave to file a third-party complaint against Signature, under which it would seek judgment against Signature "in the event that [the Debtors] prevail on their claims against Ameriquest."

21. In the introduction to the memorandum to support this motion, Deutsche Bank's current counsel states:

> Through the course of discovery, it has become clear that Signature . . . , not a current party to this action, is or may be liable to Ameriquest for all or part of [the Debtors'] claim against Ameriquest.

In sum, Deutsche Bank alleges that the closing agent who acted on behalf of Signature to handle the mortgage transaction for Ameriquest "improperly executed the 'vesting page,'" i.e., the notarized acknowledgment purportedly signed by both of the Debtors. It alleges that she did not obtain the actual signature of Robert Holmes himself before she presented a set of signature-bearing mortgage documents to Ameriquest, contrary to Signature's contractual obligation to Ameriquest. Thus, under the proposed third-party complaint, Deutsche Bank would seek judgment against Signature if the Debtors succeed in voiding the mortgage. It frames the substantive basis for its relief in three different counts, sounding under breach of contract, indemnification and contribution, and negligence.

## DISCUSSION

### Introduction

During the hearing on Deutsche Bank's motion, the Debtors' counsel stated that he did not "necessarily oppose the Plaintiffs' motion, but the Court [was] not required to take jurisdiction over [the] claim" in the proposed third-party complaint. He pointed out that Deutsche Bank could bring an action for contribution in the Minnesota state courts, and he opined that the disposition of this motion was "up to the Court's discretion."

▇ If counsel was referring to the fundamental matter of jurisdiction, his assignment of the outcome to judicial discretion is wrong. The federal courts' limited jurisdiction is a creature purely of statute. A federal court either has jurisdiction under statute, or it does not. A federal court may not exercise decision-making authority absent a basis in statute. Parties to a lawsuit may not consent or acquiesce to a federal court's jurisdiction where there is no such basis. *State of S.D. v. Hazen*, 914 F.2d 147, 149 (8th Cir.1990) (citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 7–8, 98 S.Ct. 1554, 1559–1560, 56 L.Ed.2d 30 (1978)); *In re Grand Jury Subpoenas Duces Tecum*, 78 F.3d 1307, 1310 (8th Cir.1996).[3] Thus, the court has "an independent duty to evaluate subject matter jurisdiction regardless of the litigant's [sic] positions on the issue." *In re Farmland Industs., Inc.*, 378 B.R. 829, 836 (8th Cir. BAP 2007) (citing *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 773 (8th Cir.1995)).

▇ Granting Deutsche Bank's motion would open a new and different avenue of litigation, against a party that did not appear on the Debtors' schedules and that otherwise seemed to be a stranger to the bankruptcy case. Under the circumstances, an inquiry into jurisdiction over that was warranted. Then, the jurisdiction over the original part of this litigation

---

**3.** Counsel may have been thinking of discretionary abstention, as applied to specific proceedings in bankruptcy cases. But the exercise of that discretion requires that the "particular proceeding [be one] arising under [the Bankruptcy Code] or arising in or related to a case under [the Bankruptcy Code]." 28 U.S.C. § 1334(c)(1).

was brought into question by the posture of the underlying bankruptcy case, against the nature of the relief that the Debtors sought against Deutsche Bank.[4] So, counsel were ordered to brief the issue.

### Jurisdiction as to Debtors' Claims Against Deutsche Bank

■■■ In their complaint, the Debtors classify their action against Deutsche Bank as a core proceeding in bankruptcy. The thought, apparently, is that invalidating the mortgage against their homestead pursuant to Minnesota law would be a "determination[ ] of the validity, extent, or priority of liens" within the scope of 28 U.S.C. § 157(b)(2)(K).[5]

■■■ This is wrong. Actions to determine the validity, extent, or priority of liens *against property of the bankruptcy estate* are core proceedings. *In re B.J. McAdams, Inc.*, 66 F.3d 931, 936 (8th Cir.

1995). But, "[c]ore proceedings under 28 U.S.C. § 157 are those which arise only in bankruptcy or involve a right created by federal bankruptcy law." *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d at 773. *See also In re McAlpin*, 278 F.3d 866, 868 (8th Cir.2002). Whatever the source of the law that governs the outcome,[6] an action in which a trustee seeks to resolve competing claims of lien against property of the estate is a proceeding that arises only in a bankruptcy case. That is due to the asset's repose in an estate being administered in a collective proceeding for the benefit of all of a debtor's creditors, as authorized by federal bankruptcy law, and the trustee's fiduciary status as administrator of those assets.

■■■ But here, debtors in bankruptcy are the real parties in interest as plaintiff, in consequence of an allowed exemption from the bankruptcy estate.[7] Under

---

**4.** That inquiry is by no means time-barred, either. Parties to a lawsuit commenced in the federal courts cannot confer federal jurisdiction by stipulation; there must be an objective basis under Title 28 for the federal courts to assume jurisdiction. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982); *Potter v. Norwest Mortgage, Inc.*, 329 F.3d 608, 611 (8th Cir.2003). Further, the issue of jurisdiction may be raised in federal-court litigation at any time, on motion of a party or by the court acting on its own motion. *State of Mo. ex rel. Missouri Hwy. and Transp. Comm'n. v. Cuffley*, 112 F.3d 1332, 1334 (8th Cir.1997); *Bueford v. Resolution Trust Corp.*, 991 F.2d 481, 485 (1993).

**5.** This is the logical implication of the citation to this provision in the complaint's jurisdictional averment. Strictly speaking, the reference is misplaced. Subject matter jurisdiction over bankruptcy cases and proceedings is granted under 28 U.S.C. §§ 1334(a)-(b), and those provisions alone. *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d at 773. The classification of a particular proceeding as a core proceeding under 28 U.S.C. § 157(b)

only goes to the identity of the judicial officer of the United States District Court authorized to enter a final order or judgment in proceedings within that jurisdiction, i.e., it gives a non-exclusive list of those proceedings that the district court may refer to the bankruptcy judges for the district, under 28 U.S.C. § 157(a). E.g., *In re Northwest Cinema Corp.*, 49 B.R. 479, 480 (Bankr.D.Minn.1985). After such reference, the bankruptcy judges then exercise the district court's jurisdiction over core proceedings, in the first instance. *Specialty Mills*, 51 F.3d at 773.

**6.** "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3).

**7.** Upon expiration of the period for objection to their claim of exemption to the full scheduled value of the homestead, the value of the Debtors' interest in the homestead, up to that amount, reverted to them and was no longer property of the estate. *Taylor v. Freeland & Kronz*, 503 U.S. 638, 641–644, 112 S.Ct. 1644, 1647–1648, 118 L.Ed.2d 280 (1992); *In re Wick*, 276 F.3d 412, 416–418 (8th Cir.2002); *In re Soost*, 262 B.R. 68, 72–74 (8th Cir. BAP 2001).

these circumstances, an action to determine the validity of a lien against property allowed as exempt, in which non-bankruptcy law is invoked for substantive governance, is not a core proceeding. *See Abramowitz v. Palmer*, 999 F.2d 1274, 1276–1277 (8th Cir.1993) (there is no basis for "core proceeding" jurisdiction over proceeding involving competing claims to asset of debtor, after allowance of exemption removes asset from bankruptcy estate).

However, the Debtors' action against Deutsche Bank does fall within the bankruptcy jurisdiction under the other statutory category, "proceedings related to a case under" the Bankruptcy Code. *See* 28 U.S.C. § 1334(b). Congress did not define "related to" jurisdiction. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307–308, 115 S.Ct. 1493, 1498–1499, 131 L.Ed.2d 403 (1995). The courts have articulated a test that turns on "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Celotex Corp. v. Edwards*, 514 U.S. at 308, 115 S.Ct. 1493. This reflects the congressional intention, for a jurisdictional grant of some breadth, *In re Farmland Industs., Inc.*, 378 B.R. at 833, which enables the bankruptcy courts to "deal efficiently and expeditiously with all matters connected with the bankruptcy estate," *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir.1984). Put another way, an action is related to a bankruptcy case "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Celotex Corp. v. Edwards*, 514 U.S. at 308, 115 S.Ct. 1493.

Here, the outcome of this adversary proceeding bodes to affect the administration of the Debtors' bankruptcy estate, in a concrete fashion. When the Debtors filed for bankruptcy, their homestead was encumbered of record by a mortgage in favor of Deutsche Bank's predecessor-in-interest. The Debtors scheduled the value of the homestead at $145,000.00, and the amount of the debt identified to the mortgage at $135,000.00. Apparently in contemplation of their argument that the mortgage is void, they scheduled the debt as an unsecured claim. They then claimed an exemption for the full value that they had assigned to the property, as if unencumbered. The law that they invoked for the claim of exemption, Minn.Stat. § 510.02, allowed up to $200,000.00 in equity in a homestead at that time.[8] That claim of exemption was allowed. Thus, if the Debtors were to get the mortgage declared void, they would keep their homestead free and clear through the bankruptcy process.

Minnesota law has no provision allowing an exemption for two personal property assets that the Debtors scheduled: a pro rata share of their right to receive income tax refunds for tax year 2006, and the asset previously noted in Finding 2, p. 3, apparently a right to receive damages in litigation that concerned the status or handling of the mortgagor-mortgagee relationship as to their homestead. As the Debtors' claimed exemptions now stand, these assets remain property of the bankruptcy estate, and they are subject to administration by their trustee.

However, Minnesota is one of the minority of state jurisdictions in which an alternate table of exemptions is available to debtors in bankruptcy, those under 11

---

8. In 2007, the Minnesota Legislature amended Minn.Stat. § 510.02. Among its changes, this legislation significantly increased the dollar-value of homestead equity subject to exemption. *See* discussion in *In re Engstrom*, 370 B.R. 205, 214 n. 12 (Bankr.D.Minn.2007).

U.S.C. § 522(d).[9] If the mortgage against the Debtors' homestead were held to be a valid encumbrance, the value of their equity would be reduced to $10,000.00, per the recitations in their schedules. Application of the homestead exemption of 11 U.S.C. § 522(d)(1) to that equity would leave $8,450.00 in value of exemption rights that would be applicable under the "pour-over" or "wild-card" provision of 11 U.S.C. § 522(d)(5) to any property of the Debtors' selection.[10] This would furnish the Debtors with legal authority to exempt the two rights to payment noted earlier.

▬ The Debtors' counsel has announced his clients' intention to amend their claim of exemptions to elect the federal table, if they cannot get the mortgage declared void. They would claim exemptions for the two rights to payment and their residual homestead equity alike, under the authorities just noted. Absent a showing of bad faith on the Debtors' part, or material prejudice to creditors, the Debtors would have a right to so amend, and to obtain the allowance of any such newly-claimed exemptions on their merits. *In re Kaelin*, 308 F.3d 885, 889, 891 (8th Cir.2002). *See also In re Ladd*, 450 F.3d 751, 755 (8th Cir.2006); *In re Reiland*, 382 B.R. 779, 783–786 (Bankr.D.Minn.2008).

One can fairly credit the Debtors with a reasonable motivation to do just that; indeed, the law of bankruptcy since 1978 has acknowledged a debtor's right to maximize the value of exemptions, and protected it in various ways. *In re Ladd*, 450 F.3d at 755; *In re Johnson*, 880 F.2d 78, 81 (8th Cir.1989); S. Rep. No. 95–989, at 76 (1978), as *reprinted* in 1978 U.S.C.C.A.N. 5787,

5862. Assuming such an eventuality, protected under law as it likely would be, the outcome of this adversary proceeding would have a significant effect on the administration of the Debtors' bankruptcy estate. As it stands right now, the Trustee can garner in several thousand dollars in value of estate assets for liquidation and distribution to creditors. She is in the process of doing so at this time.[11] But, if the mortgage remains attached to their homestead; the Debtors logically and justifiably amend their claim of exemptions; and the amended exemptions are allowed, the estate will lose the value of the two rights to payment and likely there will be no distribution to creditors through the Debtors' case.

There is a sharp distinction between the two outcomes in estate administration: a composition payment to unsecured creditors of at least modest dimension, versus a "no-asset" case. This shows the potential, but very real, impact on the estate from the Debtors' lawsuit against Deutsche Bank. This makes out the nexus that the case law requires for related-proceeding jurisdiction. *See In re Reeves*, 65 F.3d 670, 675 (8th Cir.1995) (where action that is not core proceeding nonetheless "affects the amount of property available for distribution or the allocation of property among creditors," it qualifies as related proceeding). The Debtors' suit against Deutsche Bank is within the bankruptcy jurisdiction of the federal courts.

### Jurisdiction as to Deutsche Bank's Proposed Claims Against Signature

▬ The gravamen of Deutsche Bank's proposed third-party complaint is that Sig-

---

**9.** The Minnesota state legislature has not opted under 11 U.S.C. § 522(b) to bar the use of § 522(d) in a bankruptcy case.

**10.** *See In re Wick*, 276 F.3d at 416. The amount of the homestead exemption under

§ 522(d)(1) applicable to bankruptcy cases commenced in 2006 was $18,450.00.

**11.** *See* Finding 8 *supra*.

nature, through its agent(s) or employee(s), brought about the circumstances that would void the mortgage. As Deutsche Bank would have it, Signature must make Deutsche Bank whole for any loss of secured status that Deutsche Bank would incur from a judgment favorable to the Debtors. Minnesota state law, and only that, would furnish the rule of decision on this claim, which is most centrally one for contribution or indemnity.

The connection between this claim and the matters at play in the Debtors' bankruptcy case is significantly more attenuated. The first part of the jurisdictional analysis is very simple: there is no way that the third-party complaint could be the basis for a core proceeding. The statutory law of bankruptcy is not implicated in any way. The resolution of Deutsche Bank's own claim against Signature has no conceivable relationship to the Debtors' right to a discharge in bankruptcy. Nor is its resolution necessary to the administration of the estate in the Debtors' case; it would have nothing to do with the allowance of scheduled claims or the pro rata division of the estate among the holders of allowed claims.

■ The second part of the analysis is more refined. Were Deutsche Bank to prevail on its claims against Signature, the collection on a judgment would not directly benefit the Debtors' bankruptcy estate. The recovery would go solely to Deutsche Bank, on account of an adjudged loss of Deutsche Bank's status as secured party. The adjudication would avail Deutsche Bank of a collateral source of satisfaction from a third party, on a claim that it otherwise could assert against the bankruptcy estate. If the administration of the bankruptcy estate had not been completed, Deutsche Bank's recovery from Signature would have an indirect effect on the administration: any amount so received would reduce the amount of any unsecured claim that could be allowed in favor of Deutsche Bank. In turn, Deutsche Bank's pro rata share of the full amount of a distribution to unsecured creditors would be reduced.[12] Put another way, the recovery could "serve to reduce some claims [i.e., Deutsche Bank's] and permit more extensive distribution of available assets in the liquidation of the estate." *In re Titan Energy, Inc.*, 837 F.2d 325, 329 (8th Cir. 1988). This sort of indirect impact on the bankruptcy estate would support related-proceeding jurisdiction over the third-party complaint. *Id.* at 329–330 (proceedings by liability insurer for declaratory judgment and injunctive relief as to "product guarantee legal liability policies," brought against party that had purchased assets from debtor in Chapter 11, fell within related-proceeding jurisdiction; an adjudication that policies did cover purchasers' claims for defective performance would "reduce the total amount of damage claims lodged against the estate," and contrary outcome would result in purchaser "join[ing] the general creditor queue, and each creditor [would] receive a smaller share of the [estate's] pie"). So, the feder-

---

**12.** Deutsche Bank timely filed a proof of claim, on December 14, 2006. It asserted a claim secured by a mortgage. At present, it has no allowed unsecured claim against the estate, or no more than a very small one. (The text of the proof of claim, executed by Deutsche Bank's former counsel, could support either conclusion.) The timely filing gave Deutsche Bank an allowed claim on the underlying debt. The proof of claim could be subject to amendment, to reflect the loss of any security via the voiding of its mortgage. Such an amendment could enable Deutsche Bank to gain the status of an unsecured creditor holding an allowed claim at this time, even if it does not have that status (and has no economic or legal motivation for asserting it) at the present time.

al courts could exercise related-proceeding jurisdiction over the third-party complaint.

### Abstention, as to Third–Party Complaint

The fact that related-proceeding jurisdiction may lie as to the third-party complaint does not mean that it should be exercised, however. The factual and logical connection between the third-party claim and the central functions of bankruptcy is stretched; it rests on the litigation-driven contingency that Deutsche Bank may lose the benefit of the mortgage. The issues are outside the specialized expertise of this forum; litigation of them would not be made any more efficient by presenting them for decision here. The adjustment of monetary responsibility between Deutsche Bank and Signature has rather little to do with the central mission of bankruptcy, the adjustment of liabilities as between a debtor and its creditors. Under such circumstances, consideration of abstention is appropriate.

■■■■ 28 U.S.C. § 1334(c)(1) gives the federal trial courts discretion to abstain, i.e., to determine that a matter otherwise within related-proceeding jurisdiction is better litigated and decided elsewhere, and to decline from entertaining such a matter.[13] *Titan Energy* furnishes the guidance for the exercise of that discretion, and its reasoning supports abstention here.

This adversary proceeding arises out of a Chapter 7 case. As a result, two considerations that militate against abstention—preserving a going-concern business operation, and retaining in one central forum all litigation that could affect that effort—do not apply. *Titan Energy, Inc.,* 837 F.2d at 330–331.[14] The issues of state law raised by Deutsche Bank against Signature are "the type of issues ... deemed best left to state courts to resolve." *Titan Energy, Inc.,* 837 F.2d at 332 (referring to *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)). The Trustee of the Debtors' bankruptcy estate has taken no interest in this adversary proceeding at all. The outcome here probably will have no more than a peripheral impact on the estate, or on the interests of the Debtors' other creditors in general. *Id.*[15]

---

**13.** The relevant language of this statute is:

. . .

(c)(1)... nothing in [28 U.S.C. § 1334] prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

**14.** In *In re Farmland Industs., Inc.,* the B.A.P. used the same considerations in treating the threshold issue, the scope of related-proceeding jurisdiction. 378 B.R. at 834 (existence of basic related-proceeding jurisdiction "may extend more broadly in the context of a Chapter 11 reorganization than in a Chapter 7 liquidation"; in a Chapter 7 case, "the bankruptcy court's 'related to' jurisdiction is not necessarily so broad").

**15.** The claims register in BKY 06–50236 shows only three claims, all timely filed. One is Deutsche Bank's; a second is that of St. Louis County, for *ad valorem* real estate taxes. The third is the only unsecured claim, in the face amount of $792.66. As long as Deutsche Bank hangs onto its status as a fully-secured (or almost fully-secured) claimant on the face of its proof of claim, that third creditor is the sole (or main) potential beneficiary of the liquidation process in the Debtors' case. But amending its filed claim to acknowledge an unsecured status bodes too many collateral consequences for Deutsche Bank's substantive position in this litigation; so one could not reasonably forecast it doing that, before the entry of judgment here. And by then, the Trustee likely will have completed her administration and made her distribution in reliance on the record status of allowed claims. Further, though in another direction, the case

And, not insignificantly, allowing the pursuit of the third-party complaint here would only delay the resolution of the claim already in litigation, and the administration of the estate. There is no apparent reason why the third-party claim was not asserted far earlier in the litigation. Deutsche Bank did not bring this motion until after a prod from the Court, to push the Debtors' claim to trial. The deadline for completion of discovery on the Debtors' claim has long since passed. That matter should be ready for trial, insofar as the gathering of evidence is concerned. Were third-party litigation commenced now, and Signature to actively defend it, Signature no doubt would demand an opportunity for discovery. Most likely, it would want a more extended time given the nature of the issues and the lapse of several years since the events.[16] Given the unexplained delay in Deutsche Bank's third-party effort, that whole process is best relegated to a non-bankruptcy forum if it has to go ahead at all.

### OUTCOME, AND ORDER

This Court will retain jurisdiction over the Debtors' complaint against Deutsche Bank, as a proceeding relating to the Debtors' bankruptcy case. Though jurisdiction could be exercised over the third-party complaint that Deutsche Bank now proposes, it will not be assumed. This Court will abstain from hearing and determining the claim that Deutsche Bank would assert against Signature. Thus,

IT IS HEREBY ORDERED that the motion of Defendant Deutsche Bank for

leave to file and maintain a third-party complaint is denied.

could result in a *de minimis* distribution on account of unsecured claims, or none at all. It is not clear whether the Trustee has collected any assets yet; it is by no means certain that she will. If the Debtors dissipated the tax refunds and the settlement-check proceeds, recovering their value may be difficult or impossible, given the indications of the Debtors' current impecunity. The case may end up as a no-asset case.

16. The record suggests that at least one key witness left the employ of Signature, and may have gone to ground. It is not even certain that Signature is still a going concern.