In re: Pamela Rae BARSNESS,
Debtor.

Pamela Rae Barsness, Plaintiff,

v.

Wilshire Credit Corporation, formerly
identified as "Wilshire Mortgage,"
Defendant.

Bankruptcy No. 08–31465.
Adversary No. 08–3063.

United States Bankruptcy Court,
D. Minnesota.

Dec. 19, 2008.

Pamela Rae Barsness, pro se.

**ORDER DISMISSING ADVERSARY PROCEEDING WITHOUT PREJUDICE, FOR WANT OF JURISDICTION UNDER 28 U.S.C. §§ 1334(a)-(b)**

GREGORY F. KISHEL, Bankruptcy Judge.

This adversary proceeding was brought in a bankruptcy case under Chapter 7 that had been commenced by Pamela Rae Barsness ("the Debtor"). Acting *pro se,* the Debtor had filed a voluntary petition on March 31, 2008. On April 23, 2008, the Debtor, again acting *pro se,* submitted a document to the Court, entitled "Injunctive relief request to the courts and Statement of Intention." In the text of that document, the Debtor "pray[ed] to the court for injunctive relief from the court to stop Wilshire Mortgage and/or its successors and/or assigns from any foreclosure proceeding in regards to" certain real estate. In the balance of that document, the Debtor complained that "Wilshire Mortgage" had failed to give her proper notice in connection with a foreclosure proceeding, had "refused to work with her situation," and had not given her any "communications to resolve payment issues" despite her having "on many occasions ... tried to work with Wilshire." Near the end of the document she stated:

> It is Pamela Rae Barsness [sic] desire to redeem her home or liquidate the home and requests 24 month stay to do so from the courts.

The Clerk of Bankruptcy Court treated this document as a complaint to commence

an adversary proceeding, FED. R. BANKR. P. 7001, filed it, and issued a summons.

On June 17, 2008, an answer to the Debtor's complaint was filed, naming "Wilshire Credit Corporation" as the answering defendant.[1] A scheduling conference under FED. R. BANKR. P. 7016 was conducted on June 18, 2008. During the conference, Wilshire's counsel advised that her client had held a mortgage against the Debtor's home and that a sheriff's sale in foreclosure of the mortgage had been conducted on October 4, 2007. She also stated that the deadline under Minnesota law for the Debtor to redeem from the sale had been April 4, 2008. Finally, she maintained that any extension of the redemption period granted under bankruptcy law, i.e., 11 U.S.C. § 108(b), had run out six weeks earlier.

Wilshire's counsel stated that she intended to make a motion for summary judgment as to the legal sufficiency of the foreclosure proceedings and the Debtor's request for an extension of her redemption period. The Debtor requested additional time to retain an attorney. She was granted that by an order entered on June 19, 2008. Wilshire's counsel was instructed to defer the preparation and service of her motion until the Debtor had had an opportunity to retain counsel. A notice of appearance by an attorney on behalf of the Debtor was not timely filed. A scheduling order was entered on July 30, 2008, setting deadlines for the completion of discovery and the filing of dispositive motions.

Wilshire's counsel filed a motion for summary judgment on October 3, 2008, giving notice of a hearing to be held on November 19, 2008. On October 31, 2008, the Debtor filed a document purporting to unilaterally dismiss this adversary proceeding. Via an order entered on November 4, 2008, the Court declined to dismiss, citing the requirement of FED. R. CIV. P. 41(a) that dismissal be sought via stipulation or formal motion. When the Court called for hearing on Wilshire's motion as scheduled, there was no response to the motion on file. Wilshire appeared by its attorney, Rebecca F. Schiller. The Debtor appeared *pro se*.[2]

In their initial remarks, both participants referred to a "motion for dismissal" made by the Debtor. No such document appeared in the electronic-format court file for this adversary proceeding, as of then. During a recess, a search revealed that the Debtor had presented a document entitled "Plaintiffs [sic] Motion for Dismissal" in hard-copy format to a clerk at the front desk of the Bankruptcy Court in St. Paul at 2:49 p.m. on November 18. For reasons not immediately clear, the document had not been scanned, filed, or brought to the attention of the undersigned.

After reviewing the tersely-worded "Motion for Dismissal" and hearing the parties' positions on it, the Court denied it as to all of the Debtor's stated bases for dismissal, but one. That one, "Improper Jurisdiction," was reserved and taken under advisement. This was done because of the protected nature of this issue, in the federal courts, and the especial sensitivity it posed for the substantive issues at bar, the alignment of the two parties, and their posture in the context of a now-closed bankruptcy case under Chapter 7.

---

1. For brevity, the defendant to this adversary proceeding will be named "Wilshire" in the balance of this order.

2. No attorney has ever entered a notice of appearance on behalf of the Debtor. At the hearing on Wilshire's motion, she claimed to have a pending appointment with an attorney at a legal services organization. However, she was unable to name the attorney, to identify the agency, or even to give the time of the appointment.

Jurisdiction over bankruptcy cases and proceedings is granted to the federal courts by 28 U.S.C. §§ 1334(a)-(b). *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 773 (8th Cir.1995). The statute vests the original jurisdiction in the district court. In turn, the district court is empowered to refer "any or all cases under [the Bankruptcy Code] and any or all proceedings arising under [the Bankruptcy Code] or arising in or related to a case under" the Bankruptcy Code to the bankruptcy judges for the district. 28 U.S.C. § 157(a). (In this district, the reference is accomplished by Loc. R. BANKR.P. (D.MINN.) 1070-1.) The bankruptcy judges for a district collectively "constitute a unit of the district court to be known as the bankruptcy court for that district." 28 U.S.C. § 151. The bankruptcy judges, then, act under the jurisdiction of the district court to preside over all cases and proceedings referred by the district court to them. *Specialty Mills*, 51 F.3d at 773. The bankruptcy judges' exercise of that jurisdiction is subject to the limitations on the authority to order entry of a final judgment that are imposed by 28 U.S.C. §§ 157(b)-(c). Those limitations are outlined by a statutory distinction between "core proceedings" and "related proceedings" in bankruptcy, which are assumed to correspond to the categories identified in 28 U.S.C. § 1334(b).

Since this framework was created in the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, the courts have usually analyzed jurisdictional issues in a sequential manner, by ascertaining the status of a proceeding as "core" or "related."

"Core proceedings . . . are those which arise only in bankruptcy or involve a right created by federal bankruptcy law." *Specialty Mills*, 51 F.3d at 773. *See also In re McAlpin*, 278 F.3d 866, 868 (8th Cir.2002). Almost inevitably, they arise directly out of one of the two central functions of bankruptcy: the administration of a bankruptcy estate—the trustee's recovery and amassing of assets, and the determination of which claimants will receive the value of the estate and in which measure—or the grant of discharge to the debtor. *See* enumeration in 28 U.S.C. §§ 157(b)(2)(A)-(P).

The requests for relief in the Debtor's letter-complaint did not commence a core proceeding in her bankruptcy case. Any challenge she made to Wilshire's compliance with governing law during its foreclosure proceedings was to be decided exclusively with reference to Minnesota authority, under statute and case law. The Bankruptcy Code, Title 11 of the United States Code, does not speak at all to the foreclosure process here. Wilshire's foreclosure procedure was commenced under state law months before the Debtor filed for bankruptcy. Federal bankruptcy law contains no provision under which a court could grant the Debtor's request for a "24 month stay" of Wilshire's efforts to vindicate its status as foreclosing mortgagee, either.[3]

---

**3.** 11 U.S.C. § 108(b) has been construed to provide a limited, 60–day extension of the period to redeem a property from the foreclosure of a mortgage. *Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d 270, 278 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). *See also In re Froehle*, 286 B.R. 94, 99–100 (8th Cir. BAP 2002); *Lehtinen v. Gerr*, 367 N.W.2d 595, 598 (Minn.App.1985). However, the language of § 108(b) gives the benefit of this extension only to "the trustee." It is not available to an individual debtor in bankruptcy who is not a debtor-in-possession under Chapter 11. Minnesota attorneys frequently err on this point. This may stem from the fact that the individual debtors in the *Johnson* case, husband and wife, were *in Chapter 11*.

Under the current posture of the Debtor's bankruptcy case, neither of her requests for relief constitute a "related proceeding" either. Status as "related to" a bankruptcy case turns on "whether the outcome of that proceeding could conceivably have any effect on the estate *being administered* in bankruptcy." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (emphasis added). The statute has been construed as a grant of fairly broad jurisdiction. *In re Farmland Indus., Inc.*, 378 B.R. 829, 833 (8th Cir. BAP 2007) (citing *Specialty Mills*, 51 F.3d at 773). Nonetheless, to qualify as "related" and thus within the bankruptcy jurisdiction, a proceeding must portend an outcome that in some way "impacts upon the handling and administration of the bankrupt estate." *Celotex Corp. v. Edwards*, 514 U.S. at 308, 115 S.Ct. 1493.

The outcome of this adversary proceeding could have no such impact, because there is no bankruptcy estate in existence or under administration at this time. When she filed for Chapter 7, the Debtor claimed all of her scheduled assets as exempt, including her interest in the real estate that had been subject to Wilshire's mortgage. No party in interest objected to those claims of exemption, so the exemptions were allowed. This, in turn, revested the Debtor with her interest in the real estate, if any she had; it was not property of the bankruptcy estate thereafter.[4]

After that, on May 30, 2008, the trustee of the Debtor's bankruptcy estate filed a notice of no-asset case, signifying that she had found no assets for administration. The Debtor then received a discharge of debt on July 11, 2008. On July 25, 2008, the Court closed the case and discharged the trustee. The closing resulted in the estate's abandonment of all other assets scheduled for the case, by operation of law, and their revesting in the Debtor. 11 U.S.C. § 554(c).

A proceeding in which a debtor in bankruptcy is challenging the enforceability of a mortgagee's rights in relation to its real property collateral can be a related proceeding for the purposes of the bankruptcy jurisdiction. However, it will qualify as such only if the bankruptcy estate is still open; the outcome of the proceeding could motivate the debtor to comprehensively amend a previous claim of exemptions in light of the adjudication on the mortgage's status, in a fashion that would deprive the estate of other, previously-collected assets; and the debtor has com-

---

This vested them with the powers and rights of a trustee in bankruptcy, 11 U.S.C. § 1107(a), including the benefit of § 108(b). *In re Martinson*, 731 F.2d 543, 544 n. 2 (8th Cir.1984). Whatever the source, the confusion was probably reinforced by *Lehtinen v. Gerr*, in which the court broadly pronounced without warrant in statutory text, that under § 108(b) "the trustee (*or the debtor*) has 60 days to cure the default after an order for relief in bankruptcy." 367 N.W.2d at 598 (emphasis added). In any event, the extension under § 108(b) arises automatically by operation of law, and it runs for a single, fixed, and relatively short period of time. There is no provision for the exercise of judicial authority to extend it via the bankruptcy process. *In re Martinson*, 731 F.2d at 544–545; *Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d at 278.

4. Upon expiration of the period for objection to her claim of exemption identified to the homestead, the value of the Debtor's interest in the homestead, up to the scheduled amount, reverted to her and was no longer property of the estate. *Taylor v. Freeland & Kronz*, 503 U.S. 638, 641–644, 112 S.Ct. 1644, 1647–1648, 118 L.Ed.2d 280 (1992); *In re Wick*, 276 F.3d 412, 416–418 (8th Cir.2002); *In re Soost*, 262 B.R. 68, 72–74 (8th Cir. BAP 2001).

mitted to doing so. *In re Holmes,* 387 B.R. 591, 599–600 (Bankr.D.Minn.2008).

That cannot happen here. The estate in the Debtor's case closed without a distribution, because there were no non-exempt assets to administer. In any event, even were the estate still open, a grant of the extension that the Debtor seeks could not cascade down to an amended claim of exemptions. The Debtor does not seek to free the property of the rights of Wilshire or any successor-in-interest. Instead, she seeks to defer the time when she would be fully called to account on the foreclosure, by having to redeem or by losing all interest in the property via the vesting of full title in the purchaser at the sheriff's sale. That would leave the configuration of claims to the real estate's value undisturbed, as among the Debtor, the estate, and Wilshire. This distinguishes the matter at bar from *Holmes,* where the debtors sought to annul a homestead mortgage entirely, and where the availability of that annulment bore directly on their election of exemptions in their bankruptcy case. 387 B.R. at 600.

The bankruptcy jurisdiction of the federal courts does not lie, as to this adversary proceeding. Wilshire's willingness all along to subject this dispute to this Court's authority, and its current wish to get a decision here and now, are irrelevant, unfortunate as that is in light of the concerted and high-quality effort Wilshire's counsel put into this litigation.[5] A party, or even all sides to a lawsuit, cannot create federal jurisdiction by consent or stipulation, where there is no freestanding basis for jurisdiction under statute. *In re Holmes,* 387 B.R. at 597, and cases cited therein. Wilshire and its counsel can credibly claim to have been blindsided by the Debtor's about-face. However, the inherent unfairness of the Debtor's actions is also irrelevant to the matter of jurisdiction. Wilshire may have redress for the waste of its resources in defending an adversary proceeding and fully preparing a motion that was stymied at the last minute; but the proper form of such vindication is not an exercise of non-existent jurisdiction.[6]

On the holdings thus made,

**5.** In explaining her initial decision to proceed in this Court, Wilshire's attorney said that her client had construed the Debtor's complaint as one seeking an extension of the automatic stay of 11 U.S.C. § 362(a) against Wilshire. Though that would have been an arguable basis for federal jurisdiction, there is no way to convert the terse verbiage of the Debtor's pleading into that. The Debtor had made no reference to the automatic stay as an ongoing restraint on the enforcement of rights by Wilshire or any successor-in-interest; nor did she request an extension of the *bankruptcy* stay in so many words. All of her references were to an opportunity for redemption from foreclosure, a creature of state law, and she explicitly asked for a substantial prolongation of that.

**6.** Wilshire could bring a motion to this court for imposition of sanctions on the Debtor under the broader authority of the bankruptcy court to address abuse of the bankruptcy process. *See In re Clark,* 223 F.3d 859, 864 (8th Cir.2000) (bankruptcy court has such power under 11 U.S.C. § 105(a)). *See also Chambers v. NASCO, Inc.,* 501 U.S. 32, 44–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (recognizing that federal courts have inherent authority to control and redress bad faith and unreasonable vexatious or wanton conduct in litigation that leads to delay, prolonging, or disruption of court proceedings, via imposition of sanctions, including award of attorney fees). This Court will have jurisdiction to entertain that motion, notwithstanding the dismissal of this adversary proceeding. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 395, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (applying FED. R. CIV. P. 11; concluding that federal trial courts may impose sanctions on plaintiff in litigation after plaintiff voluntarily dismisses lawsuit).

IT IS HEREBY ORDERED that this adversary proceeding is dismissed, for lack of jurisdiction under 28 U.S.C. § 1334(b).