# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 10-2618

_____

In re: Skyline Woods Country Club,       *
                                          *
            Debtor.                       *
----------------------------------------- *
Mid-City Bank, et al.,                    *
                                          *   Appeal from the United States
            Appellants.                   *   Bankruptcy Appellate Panel
                                          *   for the Eighth Circuit.
      v.                                  *
                                          *
Skyline Woods Homeowners                  *
Association, et al.,                      *
                                          *
            Appellees.                    *

_____

Submitted: December 15, 2010
      Filed: February 22, 2011

_____

Before LOKEN, ARNOLD, and BYE, Circuit Judges.

_____

LOKEN, Circuit Judge.

If so authorized, the purchaser of real property from a bankruptcy estate acquires title to the land "free and clear of any interest" identified in 11 U.S.C. § 363(f). After an affiliate of Liberty Building Corporation ("Liberty") purchased the Skyline Woods Golf Course in Douglas County, Nebraska, from the estate of a Chapter 11 debtor, residents of the surrounding planned community sued the

purchasers to enforce express and implied restrictive covenants. The Supreme Court of Nebraska held that the bankruptcy sale did not extinguish equitable interests in having the property maintained as a golf course. Skyline Woods Homeowners Ass'n, Inc. v. Broekemeier, 758 N.W.2d 376, 392-93 (Neb. 2008). Liberty and its secured lender, Mid-City Bank, now appeal the bankruptcy court's denial of their motion to reopen the closed bankruptcy proceedings in order to declare the Supreme Court of Nebraska judgment void and to enjoin the residents from enforcing it. We conclude denial of the motion to reopen was not an abuse of discretion because, in a reopened bankruptcy proceeding, the state-court judgment would be entitled to the full faith and credit mandated by 28 U.S.C. § 1738. Accordingly, we affirm.

**I.**

After filing a voluntary Chapter 11 petition, Skyline Woods Country Club, LLC, acting as debtor-in-possession, filed a motion under 11 U.S.C. § 363 seeking to sell substantially all its assets, including the golf course, accompanied by a proposed Asset Purchase Agreement. The high bid of approximately $2.9M was submitted by an affiliate of Liberty, which is owned and operated by David and Robin Broekemeier. The bankruptcy court approved the sale as "in the best interests of the Debtor, its creditors, its estate, and other parties in interest" and issued a Sales Authorization Order (the "Sales Order") which, consistent with 11 U.S.C. § 363(f), authorized the sale of the property to Liberty -

> free and clear of all mortgages, liens, pledges, charges . . . security interests, interests under conditional sale, capital lease or title retention agreement[s], encumbrances, easements, options, rights of first refusal, restrictions, judgments, claims, demands, successor liability, defects or other adverse claims, interests or liabilities of any kind or nature (whether known or unknown, accrued, absolute, contingent, or otherwise) in, on or arising from the Assets.

The Sales Order further provided that -

> all persons and entities . . . holding claims or interests of any kind or nature whatsoever against or in . . . the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) . . . or the transfer of the Assets to the Buyer, hereby are forever barred and estopped from asserting against the Buyer, its successors or assigns, its property, or the Assets, such persons' or entities' claims or interests.

The bankruptcy case was converted to a "no-asset" Chapter 7 liquidation and closed.

Some time after the purchase, Liberty ceased operating the golf course and began changing the nature and use of the property. Nearby residents and various homeowner associations (collectively, "the Homeowners") sued Liberty and the Broekemeiers (who we will now refer to collectively as "Liberty") in state court, asserting express and implied restrictive covenants requiring that the property be maintained as a golf course. Liberty responded by filing a motion in the bankruptcy court to enforce terms of the Sales Order, which allegedly barred the Homeowners from pursuing their state-law claims. However, after the bankruptcy court advised that Liberty must move to reopen and pay a filing fee, Liberty withdrew this motion and defended the state-court action on the merits, arguing the Homeowners' claims were precluded by the bankruptcy court's Sales Order.

The state trial court granted summary judgment to the Homeowners. Liberty appealed. The Supreme Court of Nebraska affirmed, agreeing that the property was burdened by implied covenants that the property be maintained as a golf course and concluding, after careful analysis, that such implied restrictive covenants running with the land were interests that may not be extinguished under 11 U.S.C. § 363(f). Skyline Woods, 758 N.W.2d at 392-93. Liberty then defaulted on its secured loan.

When Mid-City Bank recorded an Election to sell the property, the Homeowners commenced a second state-court action seeking, *inter alia*, to subordinate the Bank's deed of trust to the Homeowners' equitable lien for the costs of maintaining the property. The Bank and Liberty then filed this motion to reopen the Debtor's bankruptcy case and initiate an adversary proceeding to enforce the Sales Order. They sought an order enjoining the Homeowners "from enforcing or attempting to enforce the decisions of the Nebraska Supreme Court," enjoining "further prosecution of the Second State Court Suit," and declaring that the state-court orders at issue "are void for lack of subject matter jurisdiction." After the bankruptcy court[1] denied the motion, the Bankruptcy Appellate Panel (BAP) affirmed, concluding that, because the Supreme Court of Nebraska had concurrent jurisdiction to interpret the Sales Order, the judgment in the first suit was entitled to preclusive effect and therefore reopening the bankruptcy case would be futile. In re Skyline Woods Country Club, LLC, 431 B.R. 830, 836-38 (B.A.P. 8th Cir. 2010). The Bank and Liberty appeal. As the second reviewing court, we must independently apply the same abuse-of-discretion standard as the BAP and determine whether the bankruptcy court "committed a clear error of judgment in the conclusion it reached." In re Apex Oil Co., Inc., 406 F.3d 538, 541 (8th Cir. 2005) (quotation omitted).

## II.

A bankruptcy case may be reopened "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b); see Fed. R. Bankr. P. 5010. The Bank's motion sought leave to commence an adversary proceeding to declare void and enjoin enforcement of a state-court judgment. Though the parties have briefed a great many issues, the critical question is whether the judgment is entitled to full faith and credit under 28 U.S.C. § 1738. If it is, a federal court in a reopened

---

[1]The Honorable Timothy J. Mahoney, United States Bankruptcy Judge for the District of Nebraska.

bankruptcy case must give it "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). If that rule would apply in this case, the bankruptcy court did not abuse its discretion for at least two reasons -- because the relief sought by the Bank was almost certainly futile, see Redmond v. Fifth Third Bank, 624 F.3d 793, 803 (7th Cir. 2010), and because the state court adjudicating the Homeowners' second lawsuit is an alternative -- and far more suitable -- forum in which the preclusive effect of the state-court judgment under Nebraska law can be determined, see Apex Oil, 406 F.3d at 542.

The Bank argues that Congress has vested bankruptcy courts with exclusive jurisdiction over the property of a bankruptcy estate and therefore the Nebraska state-court judgment is subject to collateral attack. In Duke v. Durfee, 308 F.2d 209, 212 (8th Cir. 1962), this court surveyed prior Supreme Court decisions and concluded "that the full faith and credit clause, while foreclosing repetitious litigation of non-jurisdictional matters, does not preclude a second forum's inquiry into questions of the first court's personal or subject-matter jurisdiction." The Supreme Court reversed, adopting a broad principle of jurisdictional finality: "a judgment is entitled to full faith and credit -- even as to questions of jurisdiction -- when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." Durfee v. Duke, 375 U.S. 106, 111 (1963). In other words, interests of finality and comity preclude a collateral attack on the first court's decision as to jurisdiction, even if incorrect. As we said in McWilliams v. Blackard, 96 F.2d 43, 45 (8th Cir. 1938), "The power to decide includes the power to decide erroneously."

However, the Court in Durfee recognized there are exceptions to its broad rule of jurisdictional finality. "Doctrines of federal pre-emption or sovereign immunity may in some contexts" trump this general rule, the Court explained, citing Kalb v.

Feuerstein, 308 U.S. 433 (1940), a prior bankruptcy decision. 375 U.S. at 114. The Bank and Liberty argue that Kalb is controlling in this case. We disagree.

In Kalb, a state appellate court decided that federal bankruptcy law did not create an automatic statutory stay that would terminate state-court jurisdiction; therefore the court upheld the foreclosure proceedings at issue. The Supreme Court reversed, concluding that Congress, exercising its power to regulate bankruptcy, had ousted the state courts of jurisdiction to proceed with foreclosure after a petition was filed. Therefore, the state-court decision "was not merely erroneous but was beyond its power, void, and subject to collateral attack." 308 U.S. at 438. Because the Court in Durfee described Kalb as an exception to finality based on federal preemption, Kalb has been construed as authorizing a federal bankruptcy court to intervene "only when the state proceedings are void *ab initio*," that is, when the state-court judgment "is one which, from its inception, was a complete nullity and without legal effect." In re James, 940 F.2d 46, 52 (3d Cir. 1991). Thus, the exception has been limited to collateral attacks on state-court judgments that conflict with the *exclusive* jurisdiction of federal bankruptcy courts. See In re Hamilton, 540 F.3d 367, 372-75 (6th Cir. 2008) (the statutory injunction in 11 U.S.C. § 524(a) creates an exception to full faith and credit); Gonzales v. Parks, 830 F.2d 1033, 1034-36 (9th Cir. 1987).

We reject the contention that the bankruptcy court had exclusive jurisdiction over the Homeowners' claims in their first state-court action. Federal district courts, and their bankruptcy courts by delegation, have exclusive jurisdiction "of all cases under title 11," 28 U.S.C. § 1334(a), but that provision is limited to the Debtor's Chapter 11 petition and "the proceedings that follow the filing of a bankruptcy petition." In re Middlesex Power Equip. & Marine, Inc., 292 F.3d 61, 66 (1st Cir. 2002) (quotation omitted). The district courts also have exclusive jurisdiction of the debtor's property at the commencement of a Chapter 11 case "and of property of the estate," § 1334(e)(1), but that *in rem* jurisdiction exists only so long as property is part of the bankruptcy estate. See Valley Historic Ltd. P'ship v. Bank of New York,

486 F.3d 831, 837-38 (4th Cir. 2007). In all other cases "arising under title 11, or arising in or related to cases under title 11," the district courts "shall have original but not exclusive jurisdiction." 28 U.S.C. § 1334(b). Assuming the bankruptcy court had jurisdiction over this post-bankruptcy dispute between the Homeowners and Liberty regarding the title conveyed to Liberty by the Sales Order (an issue we need not decide), it was *non*-exclusive jurisdiction under § 1334(b), concurrent with that of state courts of general jurisdiction. See Apex Oil, 406 F.3d at 542 (concurrent jurisdiction to interpret discharge orders); Middlesex, 292 F.3d at 66-67 (concurrent jurisdiction to interpret title acquired under § 363).

The Bank and Liberty further argue that 11 U.S.C. § 363(m)[2] deprived the Supreme Court of Nebraska of authority to modify the free-and-clear title Liberty acquired under the Sales Order. By its plain language, § 363(m) applies to appeals of sales authorizations or orders, like the appeal we considered in In re Trism, Inc., 328 F.3d 1003 (8th Cir. 2003). To be sure, a bankruptcy court's Sales Order is entitled to full faith and credit if put at issue in subsequent proceedings, and the extent of its preclusive effect is determined "by virtue of the nature of rights transferred under 11 U.S.C. § 363." Regions Bank v. J.R. Oil Co., LLC, 387 F.3d 721, 732 (8th Cir. 2004). But § 363(m) does not expand the *exclusive* jurisdiction of the bankruptcy courts and therefore does not create an exception to 28 U.S.C. § 1738, the Full Faith and Credit statute. Here, the Supreme Court of Nebraska gave full faith and credit to the Sales Order and § 363(f) and ruled against Liberty on the merits. As that Court had concurrent jurisdiction to take up the issue, its decision -- made after expressly considering the arguments the Bank and Liberty wish to raise again in the bankruptcy court -- is likewise entitled to full faith and credit, in other words, to

---

[2] 11 U.S.C. § 363(m) provides, "The reversal or modification on appeal of an authorization . . . of a sale . . . of property does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith . . . unless such authorization and such sale . . . were stayed pending appeal."

whatever preclusive effect the courts of Nebraska afford it in the Homeowners' second action.[3]

As the Nebraska state courts had concurrent jurisdiction over the Homeowners' first suit, and expressly considered the "jurisdictional" arguments here asserted by the Bank and Liberty, the bankruptcy court in a reopened proceeding would be bound to give the Supreme Court of Nebraska decision the same preclusive effect it would be given by the state courts. Knutson v. City of Fargo, 600 F.3d 992, 996 (8th Cir. 2010). That made the relief the Bank and Liberty were seeking in a reopened bankruptcy case most likely futile. Moreover, the availability of an alternative forum -- the second state-court suit in which the Bank and Liberty are parties -- was a strong reason not to reopen a closed bankruptcy case. Apex Oil, 406 F.3d at 542. Finally, Liberty's action in voluntarily withdrawing its earlier motion to reopen and defending the Homeowners' first suit in state court was yet another reason to deny the motion to reopen. Even when an issue of federal law is first litigated in state court because the federal court abstained, "if a party freely and without reservation submits his federal claims for decision by the state courts, litigates them there, and has them decided there, then -- whether or not he seeks direct review of the state decision in this Court -- he has elected to forgo his right to return to the District Court." England v. La. State Bd. of Med. Exam'rs, 375 U.S. 411, 419 (1964). The bankruptcy court did not abuse its discretion in denying the motion to reopen.

The judgment of the Bankruptcy Appellate Panel is affirmed.

_____

_____

[3]Of course, Liberty could have but did not petition the Supreme Court of the United States to issue a writ of certiorari and take up the question whether the Supreme Court of Nebraska's interpretation of the Sales Order was contrary to federal law. See 28 U.S.C. § 1257(a).