**IN RE: Chai Misty LE and Nhut Huy Le, Debtors.**

**Chai Misty Le and Nhut Huy Le, Plaintiffs,**

v.

**Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Schiller & Adam, P.A., and Samuel R. Coleman, Defendants.**

BKY 13–32274
ADV 15–3037

United States Bankruptcy Court, D. Minnesota.

Signed September 18, 2015

Chai Misty Le, pro se.
Nhut Huy Le, pro se.

Ellen B. Silverman, Hinshaw & Culbertson LLP, Minneapolis, MN, Samuel R. Coleman, Schiller and Adam, P.A., St. Paul, MN, for Defendant.

## ORDER DISMISSING ADVERSARY PROCEEDING FOR LACK OF JURISDICTION

GREGORY F. KISHEL, CHIEF UNITED STATES BANKRUPTCY JUDGE

The plaintiffs in this adversary proceeding are the debtors in the underlying Chapter 13 case.[1] The case has been pending since May 7, 2013. The Les' plan was confirmed on May 22, 2014. The Les have appeared *pro se* throughout the case and the several contested proceedings within it.

This adversary proceeding is the second one the Les have commenced on the same subject matter, against defendants that included Wells Fargo and Schiller & Adam, P.A.

The first, ADV 13–3108, eventually featured 33 pleaded causes of action. It was dismissed in its entirety by the district court on April 28, 2014.[2] *Le v. Wells Fargo Bank,* N.A., 13–cv–1920, Order [Dkt. No. 175] (D.Minn. April 28, 2014), *adopting* Amended Report and Recommendation on Defendants' Motions to Dismiss and Motions on Bankruptcy References, 13–cv–1920 [Dkt. No. 162] (D.Minn. March 17, 2014).[3] The dismissal was affirmed by the Eighth Circuit. *Le v. Wells Fargo Bank, N.A.,* 595 Fed.Appx. 661 (8th Cir.2015).

The Les commenced this adversary proceeding by filing a complaint in the bankruptcy court on March 11, 2015. This complaint reprises most of the factual allegations of the complaint in ADV 13–3108. This time the Les set out only four counts for separately-cast relief. However, they rely on the very same notion of wrongdoing on the part of the defendants: Wells Fargo "committed" "fraud ... against real property in Ramsey County," Minnesota owned by the Les (the house in which the Les had lived), and "the defendants have conspired to defraud and steal property" from the Les. The nexus of the litigation is a recorded mortgage against that real estate, in favor of Wells Fargo.

In the complaint in ADV 13–3108, the Les seemed to characterize Wells Fargo's actions in foreclosing on the mortgage as fraudulent. Midway through that litigation (while the matter was pending in the district court), the Les introduced an alternate notion of fraud, that signatures under their names on the mortgage instrument had been forged. The district court declined to address that theory because the plaintiffs had not pled it in their complaint or presented it on Wells Fargo's motion to dismiss. District Court Dispositive Order, 6.

As noted earlier, the complaint at bar seems to feature four separately-pleaded legal theories. At least in part, the Les

---

1. For better context, the Plaintiffs will be identified as "the Les" after this. Defendants Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage will be identified collectively as "Wells Fargo." Defendants Schiller & Adam, P.A. and Samuel R. Coleman are a lawyer and his law firm who have represented Wells Fargo in matters against the Les.

2. ADV 13–3108 ended up in the district court after the plaintiffs purported to remove it and BKY 13–32274 as a whole to the district court. The district court assumed judicial administration over the purported removal; then it conclusively disposed of all matters before it by the rulings made on April 28, 2014.

3. The district judge's order was also filed as Dkt. No. 36 in BKY 13–32274. Henceforth, it will be termed "District Court Dispositive Order."

seem to rely on the discredited "show me the note" theory, conclusively rejected by the Minnesota Supreme Court and the Eighth Circuit Court of Appeals. *See, e.g., Jackson v. Mortgage Electronic Registration Systems, Inc.*, 770 N.W.2d 487 (Minn. 2009); *Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545 (8th Cir.2013); *Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027 (8th Cir.2012); *Stein v. Chase Home Fin., LLC*, 662 F.3d 976 (8th Cir. 2011). In conclusory fashion, they brandish the words "fraudulent" and "bogus" in reference to "trustee deeds" and "legal instruments."[4] However, they never directly plead that they (the Les) did not sign the mortgage instrument and they never directly plead that Wells Fargo forged their signatures on the recorded mortgage.[5]

Under their prayer for relief in ADV 15–3037, the Les seek an award of damages against the defendants, in the amount of $15,250,000.00. At one point within the text they characterize Wells Fargo's "transfers and conveyances relative to the subject property" as "fraudulent transfers [that] may be declared unlawful and reversed by this court." However, they never directly request that avoidance remedies be imposed on Wells Fargo toward voiding any mortgage *ab initio*. Nor do they articulate any theory under which they, as debtors in bankruptcy, would have standing to obtain such relief.[6]

In lieu of an answer, the Defendants made a joint motion for dismissal styled under Fed. R. Civ. P. 12(b)(6), *as incorporated by* Fed. R. Bankr. P. 7012(b). The briefing for the motion opens with boilerplate citations to recent Supreme Court jurisprudence under Rule 12(b)(6), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). This suggested that the Defendants were taking the now-common opening tack for the defense of civil litigation in the federal courts, challenging the facial sufficiency of the Plaintiffs' fact-pleading to meet the "plausibility standard" imposed by those two opinions. However, further on the

---

4. The phraseology suggests that the Les used documents produced by some other, unknown person outside Minnesota. As to the legal structure of collateral security in real property, Minnesota has always been a "lien state" (in which a lien is granted to a secured party in the form of a mortgage) and not a "title state" (in which security is granted by a conditional deed to a trustee for the benefit of the secured party). *Niggeler v. Maurin*, 34 Minn. 118, 123, 24 N.W. 369, 372 (1885) ("In this state a mortgagee has a lien only, and is not vested with legal title ...."). *See also* Minn. Stat. § 559.17 Subd. 1, which features a legislative recapitulation of the common-law doctrine ("A mortgage of real property is not to be deemed a conveyance ....").

5. At most, the Les say that *they* "obtained an expert forensic report which *indicated* that Wells Fargo Bank ... and agents conspired to commit forgery, did commit forgery, and forged documents in public record relative to [the Les'] property, all in an effort to defraud and steal property belonging to the bankruptcy estate of [the Les]." Complaint, ADV 15–3037 [Dkt. No. 1], 7 (emphasis added). The Les themselves do not attest in their own words to a fact of historical occurrence, the actual event of a forgery—the affixing of a signature that purported to bind the Les, which they themselves did not subscribe. At most, the Les' statement refers to their procurement of potential evidence for a legal proceeding after the fact of the signatures—by obtaining a third party's *opinion* as to whether an event occurred in history, apparently based on some undisclosed basic evidence presented to that third party.

6. The Bankruptcy Code empowers *trustees* to avoid fraudulent transfers. 11 U.S.C. §§ 544(b)(1) and 548. A debtor under Chapter 13 is vested with a few of the rights and powers of a trustee, but those do not include avoidance powers. 11 U.S.C. § 1303.

Defendants asserted claim preclusion (also known as *res judicata*) as an alternate basis for dismissal—i.e., that the grant of judgment against the Plaintiffs on every count of their earlier adversary proceeding against Wells Fargo bars the Plaintiffs from maintaining their present lawsuit, given the common subject matter of both lawsuits (the mortgage against the Plaintiffs' home on which Wells Fargo had gone forward in foreclosure).[7]

A hearing was convened on the motion for dismissal and on other demands for relief that the Plaintiffs had filed.[8] Ellen B. Silverman appeared for Defendant Wells Fargo Bank, N.A. Samuel R. Coleman appeared for himself and Schiller & Adam, P.A., as Defendants. Plaintiffs Nhut Le and Chai Misty Le appeared *pro se.*

After the parties presented argument as to dismissal on the merits, the court raised an issue that has hovered over this adversary proceeding since its commencement: does the bankruptcy jurisdiction of the federal courts even lie as to the Plaintiffs' request for substantive relief, given the posture of the underlying case?

■ The parties were directed to brief that issue as well as a refinement of the claim-preclusion issue raised by the Defendants.[9] The briefing was submitted and the matter of jurisdiction is now addressed, on the court's own motion.[10]

28 U.S.C. §§ 1334(a)–(b) confer jurisdiction on the federal courts,[11] over bankruptcy cases (28 U.S.C. § 1334(a)) and a variety of "proceedings" associated with bankruptcy cases (28 U.S.C. § 1334(b)). Exclusive jurisdiction is granted over bankruptcy cases. 28 U.S.C. § 1334(a); *In re Skyline Woods Country Club,* 636 F.3d 467, 471 (8th Cir.2011).[12]

---

**7.** To push this defense before the court through the pleading-centered framework of Rule 12(b)(6), the Defendants' counsel shoehorned nearly seven dozen pages of extrinsic documents into the record as attachments to the motion. The pretext, of course, was that these materials were "necessarily embraced by the pleadings," *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir.1999). This kind of sortie toward dismissal has become entirely too elastic, since *Twombly* and *Iqbal* shifted the weighting of the considerations on the judicial treatment of these motions. *In re Petters Co., Inc.,* 532 B.R. 100, 116 (Bankr.D.Minn.2015).

**8.** The Plaintiffs had made *ex parte* applications for entry of default judgment against Samuel R. Coleman, Schiller & Adam, P.A., and "Wells Fargo Home Mortgage (Servicer)," words in the caption of their complaint that the Plaintiffs had used to designate an ostensible party-defendant in their complaint.

**9.** In the same order [Dkt. No. 16], the Plaintiffs' applications for default judgment were denied.

**10.** The issue of jurisdiction may be raised by a federal court on its own motion, at any time during the pendency of litigation before it. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492, (1982) (citing *Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884); *State of Mo. ex rel. Missouri Hwy. and Transp. Comm'n. v. Cuffley,* 112 F.3d 1332, 1334 (8th Cir.1997); *Bueford v. Resolution Trust Corp.,* 991 F.2d 481, 485 (8th Cir.1993).

**11.** The statute vests original jurisdiction in the United States district court. Under 28 U.S.C. § 157(a) and Loc. R. Bankr.P. (D.Minn.) 1070–1, all such cases and proceedings are referred to the bankruptcy judges for the District of Minnesota. They collectively "constitute a unit of the district court," 28 U.S.C. § 151, and exercise judicial authority under the district court's jurisdiction.

**12.** A bankruptcy case is a vehicle that is commenced with a petition, 11 U.S.C. §§ 301–303, and serves as the structure through which bankruptcy relief in its various forms is accorded through associated proceedings. *See In re Northwest Cinema Corp.,* 49 B.R. 479, 480 n. 4 (Bankr.D.Minn.1985). *See also, In re Marine Iron & Shipbuilding Co.,* 104

Within the structure of a bankruptcy case, then, "original but not exclusive" federal jurisdiction is granted, as to "civil proceedings arising under [the Bankruptcy Code], or arising in or related to cases under [the Bankruptcy Code]." 28 U.S.C. § 1334(b). The component "civil proceedings" within a bankruptcy case under federal jurisdiction are divided into core proceedings, 28 U.S.C. §§ 157(b)(1)–(2), and proceedings that are "not a core proceeding but that [are] otherwise related to a case under" the Bankruptcy Code, 28 U.S.C. § 157(c)(1). *Specialty Mills, Inc. v. Citizens State Bank,* 51 F.3d 770, 773 (8th Cir.1995).

■ Core proceedings are statutorily enumerated in 28 U.S.C. § 157(b)(2). They all revolve around the two broad classes of relief accorded during the bankruptcy process, to debtors on the one hand and to creditors on the other. *In re Barsness,* 398 B.R. 655, 658 (Bankr.D.Minn. 2008) (citing facial language of enumeration in 28 U.S.C. §§ 157(b)(2)(A)—(P)).[13] Debtors' remedies in bankruptcy revolve around discharge, or other relief from the burden of debt like reorganization under Chapters 11 and 12 and debt adjustment under Chapter 13. Creditors' remedies in bankruptcy mainly concern the realization on their claims—i.e. getting some satisfaction on the debtor's debt to them.[14] In the bankruptcy process, the means for that realization is the administration of the estate that arises on every bankruptcy filing by operation of 11 U.S.C. § 541(a). Depending on the form of bankruptcy sought under the petition, the administration is performed through the recovery and liquidation of assets (Chapter 7) or the management of the estate's assets pending the confirmation of a plan through which creditors will receive payment from the debtor's future, post-confirmation resources (Chapters 11, 12, or 13).

The Eighth Circuit has cautioned against giving a broad scope to core-proceeding status, to avoid breaching Article III's structural limitations on the exercise of the judicial power of the United States, i.e. plenary federal judicial power. *In re Cassidy Land and Cattle Co., Inc.,* 836 F.2d 1130, 1132 (8th Cir.1988). *See also In re Marine Iron & Shipbuilding Co.,* 104 B.R. at 982.

■ On the other hand, related-proceeding jurisdiction has long been described as "broad." *E.g., Cutcliff v. Reuter,* 791 F.3d 875, 881–882 (8th Cir.2015); *Buffets, Inc. v. Leischow,* 732 F.3d 889, 894 (8th Cir.2013); *In re Farmland Industs., Inc.,* 567 F.3d at 1019; *In re Titan Energy, Inc.,* 837 F.2d 325, 330 (8th Cir.1988). It is "met if the proceeding 'could alter the debtor's rights, liabilities, options, or freedom of action ... and which in any way impacts upon the handling and administration of the bankruptcy estate.'" *Cutcliff v.*

---

B.R. 976, 980 (D.Minn.1989). The exclusive nature of the jurisdiction over bankruptcy cases is simply summarized: if one wishes to file for bankruptcy under federal law, one must commence a case in the federal courts; and the bankruptcy case itself stays in a federal court to its end.

**13.** From a different perspective, core proceedings are described as "those which arise only in bankruptcy or involve a right created by federal bankruptcy law." *Specialty Mills, Inc. v. Citizens State Bank,* 51 F.3d at 773. As such, most core proceedings in the statutory enumeration dovetail directly into two of the three statutory classes of bankruptcy jurisdiction—"arising under" jurisdiction, over "civil proceedings arising under" the Bankruptcy Code; or "arising in" jurisdiction, over "civil proceedings ... arising in ... cases under" the Bankruptcy Code. *In re Farmland Industs., Inc.,* 567 F.3d 1010, 1017–1018 (8th Cir.2009).

**14.** "Claim" and "debt" are defined at 11 U.S.C. §§ 101(5) and 101(12).

*Reuter,* 791 F.3d at 881–882; *Specialty Mills, Inc. v. Citizens State Bank,* 51 F.3d at 774; *In re Dogpatch U.S.A., Inc.,* 810 F.2d 782, 786 (8th Cir.1987). *See also Celotex Corp. v. Edwards,* 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995); *Integrated Health Servs. of Cliff Manor, Inc. v. THCI Co., LLC,* 417 F.3d 953, 958 (8th Cir.2005); *Kocher v. Dow Chemical Co.,* 132 F.3d 1225, 1230–1231 (8th Cir.1997); *Abramowitz v. Palmer,* 999 F.2d 1274, 1277 (8th Cir.1993) *In re Titan Energy, Inc.,* 837 F.2d at 330 (all opining that related-proceeding jurisdiction may lie where the outcome of a proceeding "could conceivably have any effect" on the administration of the bankruptcy estate).

■ But, to reemphasize: one way or another, the bankruptcy jurisdiction only encompasses proceedings that bear on the remedies that are administered *in bankruptcy,* the federal process for resolution of broader financial distress that necessarily has a closed end at some point in relation to such resolution. *In re Farmland Industs., Inc.,* 567 F.3d at 1019 (citing *Celotex Corp. v. Edwards,* 514 U.S. at 308 n. 6, 115 S.Ct. 1493 for proposition that "bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor"; and *Specialty Mills, Inc. v. Citizens State Bank,* 51 F.3d at 774, for proposition that related-proceeding jurisdiction requires "some nexus between the civil proceeding and the Title 11 case"). It is clear that there must be a bankruptcy estate *currently* in administration, for the estate-related variety of core-proceeding jurisdiction to lie, and for related-proceeding jurisdiction to lie. Further, the subject matter of the proceeding must have some kind of connection in fact or law, a nexus, to the estate as a whole or to an asset currently in the estate. *In re A.P.I., Inc.,* 537 B.R. 902, 910–11, 2015 WL 5315593 *7 (Bankr.D.Minn. Sept. 9, 2015).

■ Thus, a proceeding to determine the validity, extent, or priority of a lien against an asset of the bankruptcy estate is a core proceeding. *In re B.J. McAdams, Inc.,* 66 F.3d 931, 936 (8th Cir. 1995). However, once the subject asset is no longer property of the bankruptcy estate the proceeding no longer has core status under 28 U.S.C. § 157(b)(2)(K). *In re Holmes,* 387 B.R. 591, 598–599 (Bankr. D.Minn.2008) (relying on holding in *Abramowitz v. Palmer,* 999 F.2d at 1276–1277, that core-proceeding status of action to determine competing claims to asset of debtor lapses when debtor's claim of exemption to asset is allowed and asset passes out of bankruptcy estate).

■ To like effect—and by operation of simple logic—an "impact" or a "conceivable effect" on the administration of the bankruptcy estate is no longer possible after the estate has been fully administered, or after the outcome of the proceeding can no longer factually or legally affect the size of the estate or the division of it among claimants. Thus, after that point there is no longer a basis for related-proceeding jurisdiction either. *In re A.P.I., Inc.,* 537 B.R. at 908–09, 2015 WL 5315593 *5; *In re Barsness,* 398 B.R. at 659. *Cf. In re Holmes,* 387 B.R. at 601 (where bankruptcy estate in Chapter 7 case is still open and under administration, debtors' challenge to validity of lien against homestead is related proceeding because outcome would determine whether debtors made final election of exemptions under federal or state law, and other assets might be nonexempt and subject to trustee's recovery and liquidation depending on which exemptions debtors elected).

Under that statutory authority and its judicial construction, it is necessary to identify the posture of the Les' underlying bankruptcy case, in relation to the remedies under Chapter 13 that are still in play

there. That must be compared to the relief the Les seek under their renewed complaint against the Defendants. For the purposes of the bankruptcy jurisdiction, the question then will be, how does the latter dovetail into the structure for the former—if at all?

The outcome here is channeled by the fact that the Les sought relief under Chapter 13 and their case remains pending under it.

> The purpose of Chapter 13 is to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period. In some cases, the plan will call for full repayment. In others, it may offer creditors a percentage of their claims in full settlement.

H.R. REP. No. 95–595, 95th Cong., 1st Sess. 118 (1978). The Les proposed a plan under which they would make 36 payments of $101.36 per month to the Standing Trustee. The claims of unsecured creditors were to be paid from the accumulation of these funds. *See* Plan, [BKY 13–32274, Dkt. No. 13], ¶¶ 1.b and 11. The plan was silent as to the Debtors' relationship with Wells Fargo. It had no treatment for a claim in favor of Wells Fargo, whether designated as secured or unsecured.[15]

There was a reason for that: Wells Fargo had conducted a sheriff's sale in foreclosure of its mortgage on October 2, 2012, before the date of the Debtors' filing under Chapter 13. *See* Sheriff's Certificate of Sale, pp. 29–31 in Appendix to Defendants' Motion to Dismiss Plaintiffs' Complaint [Dkt. No. 4]. Per the Notice of Mortgage Foreclosure Sale issued by Wells Fargo, the full amount due on the underlying debt as of the date of the notice (June 20, 2012) was $163,102.48. Appendix to Defendants'

Motion to Dismiss [Dkt. No. 4], 17–18. Wells Fargo bid in $170,192.07 at the sale and received the property in foreclosure. Sheriff's Certificate, in Appendix to Defendants' Motion to Dismiss [Dkt. No. 4], 29. The Les have never disputed that this was the full amount then due on the underlying debt. And, in any event, Wells Fargo was barred from obtaining a deficiency judgment under Minn. Stat. §§ 580.225 and 582.30 Subd. 2.

■ Where there is no right to a deficiency judgment in the former mortgagee, there is no debtor-creditor relationship left. *Evans v. Rhode Island Hosp. Trust Co.*, 67 Minn. 160, 69 N.W. 715, 716 (1897) (upon foreclosure sale, by advertisement or action, underlying debt is extinguished to the amount of purchase money bid at sale); *Carnel v. Travelers Ins. Co.*, 402 N.W.2d 190, 192–193 (Minn.Ct.App.1987) (if underlying debt is extinguished by foreclosure sale, creditor-debtor relationship also ceases to exist) (citing *Cross Cos., Inc. v. Citizens Mortg. Inv. Trust*, 305 Minn. 111, 119, 232 N.W.2d 114, 119 (1975)).

■ The sale severed the previously-structured debtor-creditor relationship between the Les and Wells Fargo and altered the relevant structure of rights in other respects. *See In re Spaude*, 112 B.R. 304, 306–307 (Bankr.D.Minn.1990), and Minnesota case law discussed there. After the sheriff's sale, and during the Les' statutory redemption period, the only property attribute attributable to them that could have passed into a bankruptcy estate was the right of redemption, subject to no more than a possible extension under 11 U.S.C. § 108(b) by way of bankruptcy-specific remedies, *Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d 270, 278 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984).

---

**15.** There was no provision for any other secured or priority claim either.

After the end of a statutory period without redemption, however, there is no property interest or attribute left in the former mortgagor. *Hokanson v. Gunderson,* 54 Minn. 499, 56 N.W. 172, 173 (1893); *In re Klein,* 9 F.Supp. 57, 59 (D.Minn.1934).

The Les' six-month redemption period, Minn.Stat. § 580.23 Subd. 1, expired on April 2, 2013. District Court Dispositive Order, 2, and corresponding portions of Amended Report and Recommendation, 3.[16] This vested "perfect title" to the real estate in Wells Fargo, with the sheriff's certificate operating as a conveyance. Minn. Stat. § 580.12; *Hokanson v. Gunderson,* 54 Minn. 499, 56 N.W. at 173; *In re Klein,* 9 F.Supp. at 59. As to the real estate itself, the Les had nothing to pass into the bankruptcy estate when they filed under Chapter 13 less than a month later.

For their Chapter 13 filing, the Les did not list any sort of claim or cause of action against Wells Fargo in their asset schedules.[17] Nonetheless, they commenced ADV 13–3108 almost immediately after that, and then engaged in a flurry of activity in its litigation.[18] They pled their claims in that matter on facts said to have occurred before their Chapter 13 filing.

The more generic, conclusory fact-pleading for the matter at bar, ADV 15–3037, has no date-references for its claims of "FRAUDULENT FORECLOSURE, AND FALSE DEEDS." However, in the historical context it is beyond dispute that the Les complain of being injured by events that occurred in their entirety before their Chapter 13 filing. Thus, any cause of action under either adversary proceeding passed into their bankruptcy estate. *E.g., In re Senior Cottages of Am., LLC,* 482 F.3d 997, 1001 (8th Cir.2007); *United States ex rel ·Gebert v. Transport Admin. Servs.,* 260 F.3d 909, 913 (8th Cir. 2001); *Wolfe v. Gilmour Mfg. Co.,* 143 F.3d 1122, 1126 (8th Cir.1998); *Whetzal v. Alderson,* 32 F.3d 1302, 1303 (8th Cir. 1994); *In re Ozark Rest. Equip. Co., Inc.,* 816 F.2d 1222, 1225 (8th Cir.1987), *cert. denied,* 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987).

As estates are administered under Chapter 13 in the ordinary course in this district, non-exempt assets themselves are *not* liquidated by the Standing Trustee. Rather, their value factors into the confirmation process. Ultimately that value dictates the final extent of debtors' obligations of payment into the plan. This results from the best interests of creditors test of 11 U.S.C. § 1325(a)(4), which requires that

> the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 . . . on such date . . .

---

**16.** The Les are bound by these findings and rulings.

**17.** Their Schedule B, "Personal Property" [BKY 13–32274, part of Dkt. No. 1], has no entry at items 18 ("Other liquidated debts owed to debtor . . ."), 21 ("Other contingent and unliquidated claims of every nature . . ."), and 35 ("Other personal property of any kind not already listed . . ."). The Les do not claim an exemption on their Schedule C for a claim or cause of action against Wells Fargo, either.

**18.** After the defendants in that matter filed motions for dismissal, the Les filed multiple notices of removal to the United States district court for several proceedings: ADV 13–3108; Wells Fargo's eviction action in the Ramsey County District Court; and the entirety of BKY 13–32274. The district court strove to make sense out of the resulting confusion. Contested motions for dismissal and remand were heard. The district court disposed of all that by the comprehensive rulings of April 28, 2014.

*See In re Larson,* 245 B.R. 609, 614 (Bankr.D.Minn.2000) (best interests of creditors test in Chapter 13 requires payment to unsecured creditors in amount greater than what they would receive in hypothetical liquidation, considering exempt and nonexempt assets and potential recovery of assets under Chapter 7 through fraudulent transfer and preference actions); *In re Cordes,* 147 B.R. 498, 504 (Bankr.D.Minn.1992) (best interests of creditors test sets floor for creditors' expectations in Chapter 13 case, by comparison to return in hypothetical Chapter 7 liquidation of debtor's estate); *In re Schyma,* 68 B.R. 52, 59 (Bankr.D.Minn.1985) (ditto).

In BKY 13–32274, the Standing Trustee did not object to the confirmation of the Les' plan as they originally proposed it. Thus there is no affirmative statement in the record as to the Trustee's evaluation of the merits of the Les' claim against Wells Fargo or its economic value as an asset. But, the only reasonable inference from the lack of objection is that the Standing Trustee assigned no material value to it, for his calculus on the Debtors' satisfaction of § 1325(a)(4).

The next fixture in this analysis is:

Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

11 U.S.C. § 1327(b). The Les submitted their plan using Local Form 3015–1. There is no provision in the form for the retention of otherwise non-exempt property in the estate where it reposed up to the point of confirmation pursuant to § 541(a). The Les did not add such a provision. By operation of § 1327(b), then, the interest in the cause of action in suit in this adversary proceeding revested in the Les on confirmation over a year ago, with all of the Les' other assets.[19]

The consequence of that and the operation of other statutory governance is that the estate under the Standing Trustee's administration consisted solely of the portion of their post-petition earnings that they committed to the plan. 11 U.S.C. § 1306(a)(2) ("property of the estate includes ... earnings from services performed by the debtor after the commencement of the [Chapter 13] case but before the case is closed, dismissed, or converted ..., whichever occurs first"). *See Security State Bank of Marshalltown v. Neiman,* 1 F.3d 687, 689 (8th Cir.1993) (addressing specific question of whether bankruptcy

---

**19.** In supplementary briefing, Wells Fargo insists that this cause of action still reposes in the estate. The argument is that in a Chapter 13 case "undisclosed" property cannot revest on confirmation. (The authority cited for this is an unpublished decision, *In re Augustine,* 2009 WL 5068412 (Bankr.N.D.Ia.2009), plus *Thompson v. Quarles,* 392 B.R. 517, 523 (S.D.Ga.2008)). Wells Fargo then points out that the Les never formally scheduled this cause of action for their Chapter 13 case, and insists that that makes it "undisclosed." This argument elevates bare form over substance. The Standing Trustee was well-aware of the Les' first round of litigation as it moved to the district court. His attorney took note of it at successive scheduled confirmation hearings until the plan was actually confirmed. Wells

Fargo's reliance on *Vreugdenhill v. Navistar Int'l Transp. Corp.,* 950 F.2d 524, 526 (8th Cir.1991) is inapposite; the issue there was whether an unscheduled cause of action for damages had been abandoned on the closing of a bankruptcy case by operation of 11 U.S.C. § 554(c). That statute expressly deems abandonment as to "any property scheduled under [11 U.S.C. § ] 521(a)(1). But § 1327(b) has no such qualifier. Rather, *"all* property of the estate" (emphasis added) revests "in the debtors." At least where a Chapter 13 trustee has been well-aware de facto of the existence of an unscheduled asset that would factor in under § 1325(a)(4), there is no reason not to give this statute full effect under its facial tenor.

estate still has legal existence after revesting pursuant to § 1327(b); holding it does, on provision of 11 U.S.C. § 1322(a)(1) for trustee's supervision and control over "such portion of future earnings or other future income of the debtor ... as is necessary for the execution of the plan," among other administrative powers and duties of trustee with respect to debtor's payments under confirmed plan).[20]

The Les headed the caption of their complaint in the bankruptcy court for this district. They assert that "[jurisdiction] of this court over this matter is invoked pursuant to" various provisions of 28 U.S.C. § 157(b). That is an obvious error, *In re Holmes*, 387 B.R. at 598; but it does evidence the Les' true intent, to invoke the original jurisdiction over bankruptcy proceedings under 28 U.S.C. § 1334(b)(2), *id.*[21]

The one jurisdictional category that the Les expressly assert is that of core proceeding under 28 U.S.C. § 157(b)(2)(K):

Plainitiff [sic] therefore sues that this court may determine the validity, priority, or extent of the lien claimed by the named defendants.

Complaint [Dkt. No. 1], 4. One can set aside the fact that Wells Fargo has not "claimed" a lien against the real estate at issue since the foreclosure sale. The Les' fact-pleading asserts no basis on which they could have claimed a property interest in the real estate when they filed under Chapter 13. Wells Fargo's documentary submissions cut entirely and exclusively to the opposite, as to this fundamental necessary fact.

The conclusion from this is inescapable: no property interest of the Les in the real estate passed into the bankruptcy estate in BKY 13–32274; so any challenge to a claim of lien by Wells Fargo and any claim for damages stemming from the challenge could not be a core proceeding in BKY 13–32274 under the sole category asserted by the Les.

For that reason and more, this matter can not be a related proceeding either. Regardless of legal viability, any claim against Wells Fargo for damages revested in the Les on confirmation of their plan. So did their unfocused demand for "an order permanently enjoining defendants from asserting any right what-so-ever against the subject property, returning such property to the estate of plaintiff," Complaint, 13. Going forward, the estate in administration in BKY 13–32274 will be funded by only the $3,600.00–odd in total that the Standing Trustee will receive from the Les. The Les' obligation to complete that payment, and their creditors' right to share in the funds, are completely independent of the Les' possession or recovery of any particular asset, or their recovery on any claim for damages against Wells Fargo.[22] Neither factually nor legally, the outcome of the Les' claims

---

**20.** In theory, the estate in a Chapter 13 case could be further augmented by "all property of the kind specified in [11 U.S.C. § 541] that the debtor acquires after the commencement of the [Chapter 13] case but before the case is closed, dismissed, or converted ..., whichever occurs first." 11 U.S.C. § 1306(a)(1). There is no suggestion that this provision came into play in the Les' case.

**21.** Notwithstanding the Les' garbled references to additional sources of "Jurisdiction" under other federal statute, they cite only to provisions of *substantive law* —the Fair Debt

Collection Practices Act, the Racketeer Influenced and Corrupt Organizations Act, and the like. They cite no provision in the text of any of these statutes that would confer jurisdiction in the federal courts. For that matter, they do not plead facts that would go to the substantive governance of any of these statutes either.

**22.** The Standing Trustee did not lever any sort of amendment to the plan to funnel any recovery into the estate for administration... for fairly obvious reasons.

against Wells Fargo could have no conceivable effect on the administration of the estate under Chapter 13, de minimis as the estate's value is. There is no basis on which to exercise related-proceeding jurisdiction over this lawsuit. [23]

The federal bankruptcy jurisdiction that the Les assert for this adversary proceeding is absent. Perhaps the original strategy here was to buy long-term access to a federal forum for the Les' overwrought grievances, by the confirmation of a bland, minimum-percentage composition plan under Chapter 13. If that was so, it was wrong.

IT IS THEREFORE ORDERED that this adversary proceeding is dismissed, for lack of jurisdiction.

---

**23.** Under their supplementary briefing, both sides insisted that this matter qualified as a related proceeding, and hence the bankruptcy jurisdiction would lie. But if parties cannot stipulate to federal jurisdiction for which there is no objective basis, it certainly cannot be deemed to lie solely from a mere coincidence of asserted theories that lack extrinsic basis.