# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 22-6004

_____

In re: Bryan S. Reichel, as surety for Rudy, Inc., as surety for Pure Choice, Inc.,
formerly doing business as America's Team Properties

*Debtor*

------------------------------

Bryan S. Reichel

*Debtor - Appellant*

v.

Mary Jo Anne Jensen-Carter

*Trustee - Appellee*

_____

Appeal from United States Bankruptcy Court
for the District of Minnesota - St. Paul

_____

Submitted: September 28, 2022
Filed: November 22, 2022

_____

Before SCHERMER, SHODEEN and DOW, Bankruptcy Judges.

_____

DOW, Bankruptcy Judge.

_____

This case has been a lengthy and convoluted legal marathon. Essentially, Bryan Reichel (the "Debtor") is appealing a bankruptcy court order dated June 30, 2022 (the "Order") which disposes of a multitude of matters that were before the court. For the reasons that follow, we affirm.[1]

## STANDARD OF REVIEW

At the core of this appeal are the Debtor's repeated motions to reopen his case. A bankruptcy court's decision whether to reopen a bankruptcy case is reviewed for an abuse of discretion. *In re Pennino,* 299 B.R. 536, 538 (8th Cir. BAP 2003). A court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts. *In re Skyline Woods Country Club, LLC,* 431 B.R. 830, 833 (8th Cir. BAP 2010), *aff'd sub nom In re Skyline Woods Country Club*, 636 F.3d 467 (8th Cir. 2011). In its application, the abuse of discretion standard is nearly indistinguishable from the clearly erroneous standard. *Id*. (citations omitted).

## BACKGROUND

The Debtor filed his Chapter 7 petition on April 29, 2011. He was represented by an attorney. He voluntarily waived his discharge by signing a stipulation in November, 2012. The case was closed in March of 2017, and the Chapter 7 Trustee (the "Trustee") was discharged from service.

A brief history of the events leading up to the Debtor's bankruptcy filing and the Debtor's conduct during the proceeding is noteworthy. The Debtor founded a company called PureChoice in 1992, and served as its president and CEO. He

---

[1] The bankruptcy court ruling was issued by the Honorable Katherine A. Constantine, Judge of the United States Bankruptcy Court for the District of Minnesota.

obtained millions of dollars in bank loans for the company, but was unable to pay them back because PureChoice was not profitable. The Debtor subsequently obtained bridge loans from private investors without disclosing the full extent of the company's dire financial state. He also represented that the funding would be used to restructure its debt and fund its operations when in fact, it wasn't. Eventually, one of the investors sued the Debtor to recover $1.5 million in unpaid loans. The Debtor's defense was that payment on the loans was not due until May of 2011, so the investor agreed to delay proceeding in the lawsuit until then. The Debtor filed bankruptcy on April 29, 2011, so the investor's collection action was stayed.

The Debtor was indicted and charged with seven counts of wire fraud in September of 2014 for obtaining loans from investors and employees, allegedly for his company, and using the proceeds instead to pay off other loans and to pay himself a large salary and bonuses. A superseding indictment added five counts of bankruptcy fraud, including filing bankruptcy in furtherance of a scheme to defraud, and making false statements in relation to the bankruptcy proceeding. In November, 2016, a jury convicted the Debtor on all but one of the counts. The Debtor appealed. On December 28, 2018, the Eighth Circuit affirmed the judgment: "[A] juror could have inferred fraudulent intent concerning the bankruptcy from the evidence that Reichel filed for bankruptcy just before a creditor planned to file his summary judgment motion, then transferred funds to a hidden account, and finally failed to disclose that account and other items to the trustee." *United States v. Reichel*, 911 F. 3d 910, 916 (8th Cir. 2018). The Debtor is currently serving his prison sentence.

On September 19, 2019, the Debtor filed a motion to reopen his case (the "First Motion to Reopen"). After a hearing, the bankruptcy court denied the motion, and the Debtor appealed the order to the Bankruptcy Appellate Panel. Prior to the

3

BAP ruling, the Debtor filed what was effectively a second motion to reopen (the "Second Motion to Reopen") in which he sought a rehearing on the First Motion to Reopen, and reconsideration of the court's denial of it. The bankruptcy court denied the Second Motion to Reopen.

The BAP affirmed the order denying the Debtor's First Motion to Reopen. The Debtor filed a motion seeking the bankruptcy court's reconsideration of its first and second motions to reopen his case; the court denied the motion. The Debtor then appealed that ruling to the BAP. The BAP dismissed the appeal as an improper attempt to relitigate matters previously addressed. Following the dismissal, the Debtor filed what amounted to a third motion to reopen his case (the "Third Motion to Reopen"), arguing that he had standing due to a $7,500 tax penalty he was forced to pay the Trustee in addition to a $25,000 payment for the return of his family's personal property. The Debtor also alleged that two creditors George Anderson and 7th Rig, LLC, filed false proofs of claims in his case that led to his criminal conviction (the "Proofs of Claim"). The bankruptcy court denied the Third Motion to Reopen and the Debtor appealed. The BAP dismissed the appeal as untimely. The Debtor subsequently appealed the BAP's judgment to the Eighth Circuit Court of Appeals, which ultimately affirmed the BAP's judgment.

Amidst the appeals and the indictment described above, the Debtor filed a host of other pleadings, including a request for appointment of counsel, a motion for writ of mandamus ordering the trustee to return the $7,500 payment mentioned previously, a summary judgment motion, and a recusal motion. The Order which is the subject of this appeal disposed of all outstanding matters.

4

**DISCUSSION**

A bankruptcy case may be reopened to administer assets, to provide relief to the debtor, or for other cause. 11 U.S.C. §350 (b). The party seeking to reopen the case bears the burden of proving that cause exists. *In re Root*, 318 B.R. 851, 853 (Bankr. W.D. Mo. 2004). The decision whether to grant a motion to reopen a case is committed to the discretion of the court, and should be granted "only where a compelling reason for reopening the case is demonstrated." *Mid-City Bank v. Skyline Woods Homeowners Ass'n*, 431 B.R. 830, 835 (8th Cir. BAP 2010), *aff'd*, 636 F. 3d 467 (8th Cir. 2011). If a debtor's request is futile because the relief sought lacks merit, a request to reopen is not warranted. *In re Pennington-Thurman*, 2020 WL 2114529 (E.D. Mo. May 4, 2020). In this instance, the Debtor is undeniably seeking to reopen his case to obtain relief from his conviction. This is an improper purpose that cannot constitute cause to reopen. *Id.* at *5 (affirming order denying request to reopen because debtor mounted an improper collateral attack on prior decisions of other courts). The trial court made such a finding and the Debtor does not contest it.

In his Appellant Brief, the Debtor lists numerous instances in which he contends that the bankruptcy court abused its discretion, including denying his right to be heard, refusing to consider his objections to certain motions and proofs of claim, and refusing to grant summary judgment in his favor. He also describes several acts of alleged wrongdoing by the Trustee, asserting that it was an abuse of discretion for the Trustee to allow proofs of claim without "vetting them," to seize certain assets, and to refuse to refund the $7,500 "late fee penalty," to name a few.[2]

---

[2]The Trustee has filed a letter indicating that she is not participating in this appeal because the case was closed in 2017 and she was discharged of her duties as Trustee at that time. The Debtor is not entitled to reversal merely because there is no

Some of these accusations are addressed in the matters covered by the Order, while others are simply made by the Debtor in his Appellant Brief. Nevertheless, they are moot since the Trustee was discharged over five years ago.

After reviewing the Order and the underlying record, we see no need to address every one of the matters addressed by the bankruptcy court. Although the Debtor states in his Appellant Brief that the bankruptcy court "blanket" denied all 27 of his motions, the Order itself belies that accusation – the court based its ruling on a thorough legal analysis of the individual pleadings and why denial of each was appropriate. A few of the matters involve letters or notices on which the Debtor is not seeking relief. [Matters 1, 19, 27][3] With regard to many of the others, the Debtor mischaracterizes the facts or the law. For example, he claims that the court erred in denying his motions for appointment of counsel [Matter 11] because the attorney he hired to complete his Chapter 7 proceeding was working, at the same time, as a full time Chapter 13 staff attorney at the bankruptcy court, thus creating a conflict of interest. Generally, however, a conflict of interest is actual only if it is likely that a professional will be placed in a position permitting him or her to favor one interest over an impermissibly conflicting interest. *In re Jade Management Services*, 2010 WL 2712319, *3 (3d Cir. July 9, 2010). That is not the case here. The Debtor mistakenly equates his attorney's employment as counsel for the Standing Chapter 13 Trustee for the District of Minnesota to employment for the bankruptcy court presiding over his own proceeding; in his position as the former, the attorney would

opposition to his appeal. *See In re Donahue*, 406 B.R. 407 (M.D. Fla. 2009) (holding that appellee's failure to file a responsive brief did not mean that appellant's contentions had to be regarded as established).

[3]The reference to "Matters" throughout this opinion corresponds to the number associated with each matter listed in the Order, and is provided for clarity.

wield no authority in the Debtor's case. The Debtor presented no evidence that his counsel's job as staff attorney was detrimental to the Debtor, or interfered with counsel's representation of the Debtor at all. Therefore, the court did not abuse its discretion in denying the Debtor's request for appointment of counsel.

The Debtor asserts that it was an abuse of discretion for the Trustee to allow the Proofs of Claim without vetting them [Matters 6, 7]. As a general matter, however, the Debtor missed several opportunities to object during the pendency of his case. For example, the only objection he filed was to the claim of Craig Reichel; that same objection was the only one the Debtor made to the Trustee's Interim Report. He filed no objection at all to the Trustee's Final Report, which proposed to pay the claims. Furthermore, the Debtor did not address in his Appellant Brief the court's conclusion that principles such as laches, equity and waiver prevented him from raising the objections at this late date. We find that this ruling was well-supported by law and the record itself. In addition, the Debtor objected to the Proofs of Claim on the specific grounds that they were "false and fabricated due to the fact there is no supporting documentation on file with the US Bankruptcy Court…." This objection lacks merit. Bankruptcy Rule 3001(c)(2)(D) gives the court discretion to craft the relief when failure to file documentation is asserted. It is well-established in the Eighth Circuit that even if a proof of claim has not substantially complied with the documentation requirements of Rule 3001, the claim is still allowed unless the debtor establishes an exception under §502(b). *See In re Dove-Nation*, 318 B.R. 147, 152 (8th Cir. BAP 2004). In this instance, the Debtor did no such thing. Additionally, the bankruptcy court noted in the Order that the attorney for the creditors (on whose behalf the Proofs of Claim were filed) stated repeatedly in pleadings and at the objection hearing that supporting documentation was given to the Debtor's then attorney six and a half years ago. The court found these

representations credible. The court's denial of the multiple motions objecting to the Proofs of Claim, based on the facts and equitable principles, was not an abuse of discretion.

Regarding the Debtor's Motion for Free Copy of Transcripts [Matter 25], the court noted in the Order that this request was previously addressed by the Bankruptcy Clerk's Office. In August of 2021, the clerk filed her Notice of Filing of Official Transcript which set forth the procedures for inspecting or purchasing the transcript. In a letter dated November 22, 2021, the clerk notified the Debtor once again that the bankruptcy court does not provide complimentary copies of transcripts, even to individuals who are granted *in forma pauperis* status, and offered him several options to obtain a copy. Despite these instructions, the Debtor did not meet his burden of requesting the transcript and supplying it to the court. *See* Fed. Rules Bankr. Proc. Rule 8009 (b). He even admits in his Appellant Brief that he could not find a legal basis for his demand that he be provided a free one by the court. Without a transcript, a reviewing court cannot conclude that a bankruptcy court's findings are clearly erroneous. *In re Huonder*, 558 B.R. 303, 305 (8th Cir. BAP 2016) (citations omitted). For these reasons, the court's denial of Matter 25 was not an abuse of discretion.

Another example of the Debtor's mischaracterization of facts is his assertion that the Trustee forced him to pay $7,500 as a "penalty fee" for his taxes, and that the court abused its discretion by interjecting defenses on behalf of the Trustee in connection with the Debtor's Mandamus Motion requesting the return of that payment. [Matter 3] As the court correctly points out in the Order, the $7,500 payment was not a "penalty," but rather a settlement payment to the Trustee. The Debtor himself signed the Stipulation Re Exempt Property that was filed on April

8

20, 2012, providing that the "Debtor shall pay the trustee the sum of $7,500.00, in good funds, on or before June 15, 2012, as a full and final settlement of the estate's interest in his 2010 tax refunds." Although the Debtor now claims in his Appellant Brief that he was harassed by the Trustee and signed the settlement agreement under duress, he presented no evidence to support those allegations. To assert those defenses nearly ten years after signing the stipulation is disingenuous at best. The court's denial of the Debtor's Mandamus Motion was a reasonable exercise of its discretion given these facts.

Likewise, the Debtor mischaracterizes another stipulation that he signed as a situation in which he was "forced" to make a payment to the Trustee. He contends that, during a surprise raid, the Trustee seized several trailer loads of personal property belonging to his non-debtor spouse and daughter, and threatened to seize the rest of the property unless the Debtor's spouse agreed to settle with the Trustee for $25,000. The recitals in the Stipulation of Settlement paint a different picture. According to the Stipulation signed by the Debtor and his wife, the Trustee conducted a court-approved inspection of the Debtor's residence, and discovered significant assets which were not disclosed in the Debtor's bankruptcy schedules. The Trustee seized various assets, as authorized by the inspection order. The Debtor objected to the proposed sale of the seized property, and amended his schedules to add property and claim additional exemptions. The Trustee objected to the latter. Prior to the hearing on the objections, the parties entered into the settlement agreement. As was the case regarding the $7,500 settlement payment described previously, the Debtor waited nearly ten years to allege duress, and produced no evidence to support his allegation.

9

**CONCLUSION**

The record is replete with the Debtor's requests that the court reopen the case, review prior rulings, and revisit the Trustee's actions, all with the underlying purpose of reversing his criminal conviction and securing his release from prison. As the court correctly stated, a collateral attack on the decision of another court does not constitute cause to reopen the case. The court's analysis of each of the matters it considered in the Order was thorough and legally sound. We find no abuse of its discretion, and therefore, affirm the 27 rulings of the bankruptcy court.

_____